STATE OF WEST VIRGINIA

*v.*

DOROTHY CORINNE GREEN

(No. 13359)

Decided July 23, 1974.

*Peter L. Chakmakian* for plaintiff in error.

*Chauncey H. Browning, Jr.,* Attorney General, *Richard E. Hardison,* Deputy Attorney General, *Betty L. Caplan,* Assistant Attorney General, for defendant in error.

BERRY, JUSTICE:

This is an appeal by Dorothy Corinne Green, the defendant below and hereinafter referred to as defendant,

from a final judgment of the Circuit Court of Jefferson County entered October 16, 1972, wherein the court over-ruled defendant's motion to set aside the jury verdict of guilty of second degree murder and to grant the defendant a new trial and sentenced her to a term of not less than five years nor more than eighteen years in prison. Defendant's primary contention is that the trial court erred in not giving several of her instructions to the jury on self-defense. On April 30, 1973 this Court granted defendant's appeal and the case was submitted for decision on May 29, 1974 on the briefs and oral arguments on behalf of the respective parties.

Although the facts in this case are confusing and con-flicting, it appears from the record that on the evening of January 22, 1972 the defendant, accompanied by Rosefield Johnson and another couple, went to the Elk's Club locat-ed outside Charles Town, West Virginia. Shortly after midnight, while they were sitting around a table near the juke box, it appears that the defendant believed one Cerelle Doleman, who was sitting at an adjacent table, was staring at her and the defendant told her to stop staring. Whereupon, Cerelle Doleman replied that she could look anywhere she wished, and shortly thereafter the two women became engaged in a fight on the dance floor. The evidence is conflicting as to who struck the first blow. However, it appears that Cerelle Doleman's husband, Randolph Doleman, and Rosefield Johnson, who was accompanying the defendant, also became involved in the altercation.

The defendant testified that she was slapped by Cerelle Doleman and retaliated by striking back. Whereupon, Mrs. Doleman's husband intervened and shouted, "I will kill that damn yellow bitch", referring to the defendant. Rosefield Johnson attempted to separate the women, and was struck with a folded chair on the head and shoulders from behind by an unknown party. The defendant testified that she was knocked to the floor and was being kicked in the face by Mrs. Doleman, but she managed to grab the

foot of Mrs. Doleman and regain her feet. Whereupon, she went back to a table and obtained a .22 caliber revolver from her purse and retreated to the north wall of the club near the juke box because she felt that a threatening crowd, which was coming toward her, was about to reach her. She testified that she issued warnings to stand back, but when the crowd came too close to her she pulled the trigger and shot one of the persons in the crowd and killed her. The person who was shot was one Betty Doleman, and apparently Betty Doleman was not involved in the altercation between the parties prior to the shooting. Expert testimony revealed that the victim was shot once through the heart and died immediately and that the shot which killed the victim was fired at a distance of only 28 or 29 inches from the victim.

The testimony of Cerelle Doleman and several other state's witnesses was to the effect that after the defendant and Cerelle Doleman were separated the defendant walked back to a table, dumped her purse out onto the table, picked up her .22 caliber revolver which had been in the purse and then shot and killed Betty Doleman. It appears from the record that Betty Doleman, the victim in this case, was sitting at the same table with Cerelle Doleman prior to the altercation and was Cerelle Doleman's husband's sister-in-law.

The assignments of error relied on by the defendant are: (1) the trial court erred in refusing to give instructions offered by the defendant on the theory of self-defense; (2) the trial court erred in giving an instruction relating to first and second degree murder because there was insufficient evidence to support such an instruction.

The defendant relied on the theory of self-defense during the trial of the case and the trial court refused to give the jury instructions dealing with self-defense. The evidence introduced during the trial was conflicting and confusing. However, the defendant's evidence was to the effect that after the altercation with Cerelle Doleman, she got up and obtained a revolver from her purse and

retreated to the north wall of the club because she thought she was being threatened by the crowd which was closing in on her, and that she fired the revolver at the people in front of her, among whom were Cerelle Doleman and Betty Doleman. She testified that she told the crowd to stand back but when the crowd came too close she fired the revolver. Although it is clear that Betty Doleman was not involved in the altercation between the defendant and Cerelle Doleman, the testimony of the defendant indicates that she believed she was in danger of suffering great bodily harm or death immediately before she pulled the trigger.

The evidence in the case shows that the revolver was fired at a distance of 28 or 29 inches from the victim. If the bullet were intended for Cerelle Doleman and hit Betty Doleman it would not excuse an intentional homicide but the same defenses would be available to the defendant as if she had killed the original assailant. *State v. Clifford,* 59 W.Va. 1, 52 S.E. 981; *Johnson v. State,* 125 Tenn. 420, 143 S.W. 1134. This matter is discussed in 40 Am. Jur. 2d *Homicide* § 144 as follows: "If the circumstances are such that they would excuse the killing of an assailant in self-defense, the emergency will be held to excuse the person assailed from culpability, if in attempting to defend himself he unintentionally kills or injures a third person." Although, as stated above, the evidence is confusing it is clear that there is evidence to support the defendant's theory of self-defense and where there is competent evidence tending to support a theory it is error for the trial court to refuse to give a proper instruction presenting such theory when requested to do so. *State v. Hayes,* 136 W.Va. 199, 67 S.E.2d 9; *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550. It was held in point 4 of the syllabus of the case of *State v. Foley,* 128 W.Va. 166, 35 S.E.2d 854, that: "Where, in a trial for murder, there is competent evidence tending to show that the accused believed, and had reasonable grounds to believe, that he was in danger of losing his life or suffering great bodily harm at the hands of several assailants acting together,

he may defend against any or all of said assailants, and it is reversible error for the trial court to refuse to instruct the jury to that effect." It appears from the evidence that the defendant was entitled to at least one instruction on self-defense and thus, the trial court's refusal to do so is reversible error.

It is the contention of the defendant in her second assignment of error that the evidence introduced during the trial of the case did not warrant the trial court instructing the jury on first and second degree murder. Inasmuch as the jury's verdict was for second degree murder we do not have to consider the instruction relative to first degree murder. The defendant contends that no malice was shown in the evidence introduced during the trial. Where there is an intentional use of a deadly weapon which produces the death of another the jury may infer malice from the use of the weapon. *State v. Shelton,* 116 W.Va. 75, 178 S.E. 633; *State v. Gunter,* 123 W.Va. 569, 17 S.E.2d 46. However, this inference or presumption is rebutted when the defendant relies on self-defense. *State v. Waldron,* 71 W.Va. 1, 75 S.E. 558. It is true that if the defendant fired the shot that killed Betty Doleman in the heat of passion without any "cooling off" period after the altercation with Cerelle Doleman, she would be guilty of manslaughter only. *State v. Cassim,* 112 W.Va. 92, 163 S.E. 769; *State v. Bowyer,* 143 W.Va. 302, 101 S.E.2d 243. The evidence introduced by the state, which is in conflict with that introduced on behalf of the defendant, indicates that the defendant may have been at fault in provoking the altercation. In fact, it appears that when she accused Cerelle Doleman of staring at her the entire melee was precipitated, and the evidence also indicates that after the defendant got up from the floor a certain "cooling off" period may have elapsed before she obtained her revolver and fired into the crowd.

It is only in cases where the defendant is free from fault that an instruction to the jury on murder should not be given. *State v. Clifford, supra,* and although malice

must exist before the defendant can be found guilty of murder in the second degree it is sufficient if it springs into the mind at the very instant the victim was killed. *State v. Panetta,* 85 W.Va. 212, 101 S.E. 360. This question is clearly stated in point 6 of the syllabus of the case of *State v. Clifford, supra,* wherein it is held: "When the homicide, in respect to which the accused is on trial, immediately followed an unprovoked assault upon, and severe beating of, him, and the evidence tends to prove the offense of manslaughter, the court may properly give instructions based upon the theory of guilt of murder, if there is any evidence in the case tending to prove the commission of such crime."

For the reasons stated herein, the judgment of the Circuit Court of Jefferson County is reversed, the verdict of the jury is set aside and a new trial is awarded to the defendant.

> *Judgment reversed;*
> *verdict set aside;*
> *new trial awarded.*