252 S.E.2d 374 (1979)
STATE of West Virginia
v.
Darrell Lee KIRTLEY.
No. 13912.
Supreme Court of Appeals of West Virginia.
November 28, 1978.
Concurring Opinion February 28, 1979.
*375 Beckett, Burford & James, Robert H. Burford, Huntington, for Darrell Lee Kirtley.
Chauncey H. Browning, Atty. Gen., Paul T. Farrell, Asst. Atty. Gen., Charleston, for the State.
MILLER, Justice:
Darrell Lee Kirtley appeals his conviction of involuntary manslaughter upon an indictment for murder from the Circuit Court of Cabell County. He contends an improper instruction under State v. Pendry, W.Va., 227 S.E.2d 210 (1976), was given which presumed malice from the use of a deadly weapon. Further, he asserts that the court should not have permitted the jury to consider a second degree murder verdict and that the State's self-defense instruction was erroneous. We reverse the conviction on the latter point, holding that where there is sufficient evidence to create a reasonable doubt as to the defense of self-defense, the State must prove the lack of self-defense beyond a reasonable doubt.
The defendant Kirtley, a nineteen-year-old college student, killed a young man outside a bar in Huntington, West Virginia. The defendant and a friend, Ronald Roesch, had gone to the bar to meet some friends.
During the course of the evening another group of young men, of whom the deceased John Hill was a member, was at the bar and began taking Roesch's freshman cap. It was snatched several times from his head and on each occasion he was able to retrieve it. Both groups were drinking.
All of the witnesses to this byplay in the bar testified that there was no overt animosity between the two groups. The defendant Kirtley and his group were advised, however, that the Hill group had a reputation for being belligerent, whereupon Kirtley and his group decided to leave the bar.
Kirtley and Roesch went into the parking lot to get into Kirtley's automobile. They were followed by Mike Phillips, a member of the Hill group who had been the one primarily engaged in taking Roesch's cap. Phillips was carrying a broken beer bottle and approached Roesch, who asked the nature of the trouble. Phillips responded that he wanted Roesch's cap, and upon being told he could have it, told Roesch that he could not get off so easily.
The defendant Kirtley, who was on the driver's side of his car opposite Roesch and Phillips, opened the car door and obtained a club which he passed to Roesch. Kirtley then got into the car and was attempting to start it. In the meantime, Hill had come from the bar to the driver's side of Kirtley's car. He opened the door and told Kirtley to get out of the car. Standing a short distance behind Hill was Danny Dawson, another member of the Hill group.
It does not appear that Hill had any weapon, but there is evidence that Dawson had a broken beer bottle in his hand. On the floor of his car the defendant had a bayonet-type knife, which he seized in his right hand, and he began waiving it out the open door. There was evidence that Hill had seized Kirtley and was attempting to pull him out of the car when Kirtley stabbed him in the chest.
After the stabbing Hill broke off the encounter and, assisted by Dawson, went back toward the bar. He collapsed and was dead on arrival at a local hospital. The defendant left in his car, leaving Roesch on the parking lot. He drove to his home and *376 informed his father of the incident. In the company of his father, he then drove to the police station and gave a voluntary statement.
One of the unique aspects of this case is that the essential facts outlined above were not materially disputed. The State presented only one eyewitness to the events which occurred outside the bar. On direct examination he testified to the positions of Hill and Dawson on the driver's side of the car and to the fact that Hill had seized Kirtley, who was in the car. The State's evidence also demonstrated that there had been no visible animosity between the two groups inside the bar during the course of the cap-snatching, and that the defendant Kirtley and Roesch had left the bar, followed shortly by Phillips, Hill and Dawson.
At the conclusion of the case the State agreed that the evidence would not support a verdict of first degree murder, but maintained that the use of the bayonet-like knife was sufficient to support a verdict of second degree murder. Over the objection of the defendant, the court permitted the jury to consider a second degree murder verdict, and the following instruction was given by the State:
"The Court instructs the jury that when a homicide is committed that there arises a presumption of malice when a deadly or dangerous weapon is used in the homicide, and further that this is a rebutable [sic] presumption that may be disspelled [sic] by competent evidence to the contrary."
The evidence is undisputed that the defendant Kirtley did nothing to provoke the attack which occurred in the parking lot. He claimed that with Hill trying to pull him out of the car and Hill's companion Dawson standing in close proximity with a broken beer bottle, he was in fear of great bodily injury.

I
The trial court was not warranted in permitting the jury to consider a second degree murder verdict, as the State did not prove the element of malice, which is essential to a verdict of first or second degree murder. State v. Starkey, W.Va., 244 S.E.2d 219 (1978); State v. Morris, 142 W.Va. 303, 95 S.E.2d 401 (1956); State v. Cassim, 112 W.Va. 92, 163 S.E. 769 (1932); State v. Galford, 87 W.Va. 358, 105 S.E. 237 (1920).
Traditionally, we have held that where a defendant is the victim of an unprovoked assault and in a sudden heat of passion uses a deadly weapon and kills the aggressor, he cannot be found guilty of murder where there is no proof of malice except the use of a deadly weapon. State v. Morris, supra; State v. Ponce, 124 W.Va. 126, 19 S.E.2d 221 (1942); State v. Galford, supra. The rule is stated in the tenth and eleventh syllabus points of State v. Clifford, 59 W.Va. 1, 52 S.E. 981 (1906):
"10. A sudden intentional killing with a deadly weapon, by one who is not in any way at fault, in immediate resentment of a gross provocation, is prima facie a killing in heat of blood, and, therefore, an offense of no higher degree than voluntary manslaughter."
"11. When in such case the evidence discloses that no time intervened between the giving of the provocation and the act of killing, within which passion could have subsided and reason regained its dominion and the fatal act itself was not attended by circumstances of extreme cruelty and inhumanity, nor preceded by conduct from which malice can be inferred, a conviction of murder in the second degree should be set aside and a new trial allowed."
The important point which our cases have emphasized is that the heat of passion engendered by provocation and resulting in an intentional killing "cannot be traced to a malignant heart, but it is imputable to human frailty. Passion and malice are not convertible terms, so that an act prompted by the one cannot be said to proceed from the other." State v. Ponce, 124 W.Va. at 128, 19 S.E.2d at 222; State v. Galford, 87 W.Va. at 366, 105 S.E. at 240. It is the element of malice which forms the critical distinction between murder and voluntary *377 manslaughter. State v. Starkey, W.Va., 244 S.E.2d at 225. Consequently, where provocation is shown to exist as a matter of law, a murder instruction or conviction is not warranted.[1]
It is the instructional aspect of this problem which gave rise to Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and our case of State v. Pendry, W.Va., 227 S.E.2d 210 (1976), where it was determined that the absence of provocation was an essential element of the State's proof of second degree murder. In Pendry, we held that it was constitutionally impermissible for the State to give an instruction that advised the jury that they could presume malice from the use of a deadly weapon and thereby require the defendant to prove that he acted upon provocation. The State's instruction here was obviously defective under Pendry, which we have made retroactive in Jones v. Warden, West Virginia Penitentiary, W.Va., 241 S.E.2d 914 (1978), cert. denied, ___ U.S. ___, 99 S.Ct. 107, 58 L.Ed.2d 125, as a result of the mandate of the United States Supreme Court making Mullaney retroactive in Hankerson v. North Carolina, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977).

II
In this case, however, we do not deem permitting the jury to consider a verdict of second degree murder and the giving of a Pendry instruction to be reversible error, because the jury returned a verdict of involuntary manslaughter. We recognize that a Pendry instruction can create error of a constitutional magnitude. In Jones v. Warden, West Virginia Penitentiary, supra, this Court divided over the question of whether the giving of such an instruction could be determined to be harmless error. In Jones, the jury found the defendant guilty of second degree murder and consequently there was a direct correlation between the impermissible instruction and the jury verdict. The impact of the instruction on the factfinding or verdict could only be deemed directly congruent. Here, there is no such direct correlation, since the verdict was involuntary manslaughter.
We know of no case where a court has applied the Mullaney principle to overturn a conviction of a lesser crime than murder on the theory that the unconstitutional instruction, shifting from the state the burden of proving lack of provocation for murder, rendered such verdict defective.[2] The doctrine of harmless constitutional error finds its modern genesis in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). Chapman stated that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error," 386 U.S. at 23, 87 S.Ct. at 827-28, 17 L.Ed.2d at 710, and then cited as illustrations Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963) (right to counsel); Payne v. Arkansas, *378 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (coerced confession); and Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749, 50 A.L.R. 1243 (1927) (impartial judge).
Both Chapman and Fahy recognize, however, that in a given case the constitutional error may be unimportant and insignificant with respect to the ultimate verdict, and that under these circumstances a court can find beyond a reasonable doubt that the error was harmless. We have followed much the same rule. State v. Boyd, W.Va., 233 S.E.2d 710 (1977); State ex rel. Grob v. Blair, W.Va., 214 S.E.2d 330 (1975); State v. Thomas, W.Va., 203 S.E.2d 445 (1974).
Under the doctrine of harmless constitutional error, we find that the giving of an instruction which states that malice may be presumed from the use of a deadly weapon will not alone be sufficient to reverse a conviction for involuntary manslaughter. The reason for this rule is that the mere presence of a constitutionally defective instruction not related to the actual verdict may be deemed, in the absence of any other factors, to have an insubstantial or unimportant effect on the verdict. The instruction at issue here is therefore harmless beyond a reasonable doubt.

III
Defendant's final assigned error centers on the State's instruction on self-defense.[3] Defendant urges us to adopt the rule announced by the Pennsylvania court in Commonwealth v. Hilbert, 476 Pa. 288, 382 A.2d 724 (1978), which places the burden on the State to establish initially beyond a reasonable doubt the absence of self-defense.
Hilbert relies upon Hankerson v. North Carolina, supra, Mullaney, supra, and In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), all of which spoke to the principle that the Due Process Clause requires the prosecution to prove beyond a reasonable doubt every essential element of a crime. We do not agree, however, that these cases mandate that the prosecution must initially disprove beyond a reasonable doubt those matters which have been traditionally regarded as affirmative defenses to a particular crime.
We believe that Hilbert overlooks critical language in Hankerson, where the Court stated:
"Since the issue of whether due process requires the prosecution to disprove self-defense beyond a reasonable doubt under North Carolina law was not raised by either party in this case, we decline to consider it now." [432 U.S. at 245, 97 S.Ct. at 2346, 53 L.Ed.2d at 316]
Moreover, Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), indicates that the Due Process Clause does not necessarily require that a state refrain from allocating to the defendant the initial burden of introducing some evidence as to his affirmative defense:
"Long before Winship, the universal rule in this country was that the prosecution must prove guilt beyond a reasonable doubt. At the same time, the long-accepted rule was that it was constitutionally permissible to provide that various affirmative defenses were to be proved by the defendant. This did not lead to such abuses or to such widespread redefinition *379 of crime and reduction of the prosecution's burden that a new constitutional rule was required. This was not the problem to which Winship was addressed. Nor does the fact that a majority of the States have now assumed the burden of disproving affirmative defenses  for whatever reasons  mean that those States that strike a different balance are in violation of the Constitution." [432 U.S. at 211, 97 S.Ct. at 2327-28, 53 L.Ed.2d at 292-93]
Historically, matters such as the burden of proof of an issue and presumptions or inferences that may legally arise from certain facts were settled by court-created rules. One commentator has traced the presumption of malice arising from a killing to The King v. Oreby, 2 Ld.Raym. 1485, 92 Eng.Rep. 465 (K.B. 1727).[4] Besides judicially created burdens and presumptions, there are those arising from legislative enactments. In this area it has long been held that there must be a rational connection between the basic fact and the fact presumed. Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); Mobile, J. & K. C. Railroad Co. v. Turnipseed, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78 (1910). In Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), this rule was reaffirmed and a statutory presumption was found unconstitutional as being not rationally related to the basic fact, and the Court for the first time suggested that in criminal cases, legislative presumptions which operate to prove an essential element of a crime may be subject to a stricter constitutional test:
"Since we find that the § 176a presumption is unconstitutional under this standard, we need not reach the question whether a criminal presumption which passes muster when so judged must also satisfy the criminal `reasonable doubt' standard if proof of the crime charged or an essential element thereof depends upon its use. Cf. United States v. Adams, 293 F.Supp. 776, 783-784 (1968). See also United States v. Romano [382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210], supra, at 140-144, 86 S.Ct. 279, 15 L.Ed.2d at 213, 214, 215; Comment, The Constitutionality of Statutory Criminal Presumptions, 34 U.Chi.L.Rev. 141 (1966)." [395 U.S. at 36 n. 64, 89 S.Ct. at 1548, 23 L.Ed.2d at 82]
It is against this backdrop that Mullaney must be viewed. Mullaney dealt with a judicial presumption arising from a jury instruction relating to Maine's murder-manslaughter distinction, where the Court found that the state had impermissibly shifted to the defendant the burden of proving provocation. The Court concluded that historically at common law provocation was the key distinction between manslaughter and murder and that the state, in order to prove murder, had to prove beyond a reasonable doubt the lack of provocation. There is no doubt that the Court considered lack of provocation to be an essential element in the state's burden of proof for murder.
As we have noted, Patterson v. New York, supra, makes clear that, under due process principles, state courts and legislatures have a certain latitude to set their own standards on proof of affirmative defenses. Even prior to Mullaney and Patterson, the Supreme Court had decided for the federal courts that where a defendant introduced some evidence on the affirmative defense of insanity, the prosecution was then required to prove beyond a reasonable doubt that the defendant was not insane. Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895). Patterson makes clear that the holding in Davis did not rest on constitutional grounds and that the Davis rule did apply to other affirmative defenses. 432 U.S. at 202-204, 97 S.Ct. at 2323-24, 53 L.Ed.2d at 287-88; see, e. g., United States v. Jackson, 569 F.2d 1003, 1008 n. 12 (7th Cir. 1978); United States v. Corrigan, 548 F.2d 879 (10th Cir. 1977) (once *380 some evidence of self-defense is introduced the prosecution must prove lack of self-defense beyond a reasonable doubt).
Many state courts, either prior to or without discussing the Mullaney principle and without resort to any constitutional underpinning, have held under their interpretation of the appropriate judicial balance of the burden of proof of self-defense, that once a defendant has introduced sufficient evidence to create a reasonable doubt on the issue of self-defense, the state is obliged to disprove the defense of self-defense beyond a reasonable doubt. Graham v. State, 339 So.2d 110 (Ala.App.1976), cert. denied (Ala.), 339 So.2d 114; State v. Garcia, 114 Ariz. 317, 560 P.2d 1224 (1977); Bolin v. State, 297 So.2d 317 (Fla.App.1974); People v. Halley, 13 Ill.App.3d 719, 300 N.E.2d 645 (1973); Montague v. State, 360 N.E.2d 181 (Ind.1977); State v. Cruse, 228 N.W.2d 28 (Iowa 1975); State v. Sharp, 338 So.2d 654 (La.1976); State v. Millett, 273 A.2d 504 (Me.1971); People v. Hartwick, 8 Mich.App. 193, 154 N.W.2d 24 (1967); State v. Quinn, 186 Minn. 242, 243 N.W. 70 (1932); State v. Minnis, 486 S.W.2d 280 (Mo.1972); State v. Archbold, 178 Neb. 433, 133 N.W.2d 601 (1965); State v. Terry, 41 N.J. 1, 194 A.2d 457 (1963); State v. Robinson, 48 Ohio App.2d 197, 2 Ohio Ops.3d 171, 356 N.E.2d 725 (1975), aff'd, 47 Ohio St.2d 103, 1 Ohio Ops.3d 61, 351 N.E.2d 88 (1976); State v. Barrett, 128 Vt. 458, 266 A.2d 441 (1970).
The rationale of these cases is rather simple. They reason that since self-defense is an absolute justification for a killing, once sufficient evidence is in the case to create a reasonable doubt on this issue the state, in order to obtain a guilty conviction, must prove beyond a reasonable doubt that the killing was not justified.
Following Mullaney, a number of states reconsidered their law of self-defense and held that once a defendant brings some evidence of self-defense into the case, the state must disprove self-defense beyond a reasonable doubt. People v. Banks, 67 Cal. App.3d 379, 137 Cal.Rptr. 652 (1976); Henderson v. State, 234 Ga. 827, 218 S.E.2d 612 (1975); State v. Evans, 278 Md. 197, 362 A.2d 629 (1976); Commonwealth v. Rodriguez, 370 Mass. 684, 352 N.E.2d 203 (1976); State v. Hankerson, 288 N.C. 632, 220 S.E.2d 575 (1975), rev'd on other grounds, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977); State v. Roberts, 88 Wash.2d 337, 562 P.2d 1259 (1977). It is now clear that a substantial majority of the states, as well as all federal courts, hold that once some evidence of self-defense is in the case, the burden is then on the prosecution to disprove the defense of self-defense beyond a reasonable doubt.[5]
In most of our cases involving self-defense, the issue has centered on whether the defendant has introduced sufficient evidence to be entitled to a self-defense instruction. This point was expressed in the syllabus of State v. Green, W.Va., 206 S.E.2d 923 (1974):
"`Where, in a trial for murder, there is competent evidence tending to show that the accused believed, and had reasonable grounds to believe, that he was in danger of losing his life or suffering great bodily harm at the hands of several assailants acting together, he may defend against any or all of said assailants, and it is reversible error for the trial court to refuse to instruct the jury to that effect.' Point 4, syllabus, State v. Foley, 128 W.Va. 166, 35 S.E.2d 854." [206 S.E.2d at 926]
A somewhat different formulation of the rule can be found in those cases where it is stated that where a defendant relies upon self-defense, he must establish it by a preponderance of the evidence. State v. Harlow, 137 W.Va. 251, 71 S.E.2d 330 (1952); State v. Zannino, 129 W.Va. 775, 41 S.E.2d 641 (1947); State v. McMillion, 104 W.Va. 1, 138 S.E. 732 (1927).[6]
*381 We have not been cited nor have we found a decision by this Court where there has been occasion to decide to what extent the State has an obligation to refute the defense of self-defense once there is evidence in the case on the issue of self-defense.[7] This particular point appears to be a matter of first impression in this State.
We have recognized that the defense of self-defense constitutes a complete justification for a homicide. State v. Bowyer, 143 W.Va. 302, 313-14, 101 S.E.2d 243, 249 (1957); State v. Foley, 128 W.Va. 166, 35 S.E.2d 854 (1945). In view of this and in light of the majority rule, which holds that the prosecution must prove beyond a reasonable doubt the absence of a defense which constitutes complete justification for a killing, we find that once there is sufficient evidence in the case to create a reasonable doubt that the killing resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense. Tested by this standard, the State's instruction contained in note 3 supra, did not properly set forth the law. It focused only on the defendant's initial burden to produce some evidence of self-defense, and totally failed to state that once this was done, the State was required to disprove the defense of self-defense beyond a reasonable doubt. Furthermore, it required the defendant initially to prove the defense by a preponderance of the evidence. It is sufficient if the evidence on this issue creates a reasonable doubt.[8]
In closing, we wish to make clear that our announced rule on allocating the burden of proof on the issue of self-defense is not bottomed on constitutional due process principles as it has been in some jurisdictions. See, e. g., State v. Evans, 278 Md. 197, 362 A.2d 629 (1976); Commonwealth v. Rodriguez, 370 Mass. 684, 352 N.E.2d 203 (1976); Commonwealth v. Hilbert, 476 Pa. 288, 382 A.2d 724 (1978). Consequently, we are not involved with extending full retroactivity to today's rule, as have those courts which have placed their holdings on due process principles. See, e. g., State v. Evans, *382 supra; Commonwealth v. Stokes, 374 N.E.2d 87 (Mass.1978) (making Rodriguez fully retroactive).
In Adkins v. Leverette, W.Va., 239 S.E.2d 496 (1977), we discussed the doctrine of retroactivity to some extent and noted that in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the United States Supreme Court decided, at least for the federal system, that the common law doctrine giving full retroactivity to any case substantially altering a relevant body of prior law was not to be applied in all cases. Adkins also recognized that Falconer v. Simmons, 51 W.Va. 172, 41 S.E. 193 (1902), had adopted to some degree the common law theory, but our recent cases have undermined its validity.
Adkins cited a number of United States Supreme Court cases, including Hankerson, that have given full retroactivity to certain new constitutional principles that corrected some flaw in a criminal trial that substantially impaired its truth-finding function.[9] We do not deal with such a principle in this case, and therefore do not make today's ruling retroactive.
Because an improper self-defense instruction was given, we reverse the conviction and remand the case for a new trial.
Reversed and remanded.
HARSHBARGER, Justice, concurring:
I agree with the result we reach in this case but regret that this Court would allow an instruction stating that malice may be presumed from the use of a deadly weapon, to be given in a murder trial even though the defendant was convicted "only" of involuntary manslaughter.
The majority holds that because the guilty verdict was for an offense that does not have malice as an element, that the instruction could not have affected the factfinding process and therefore was harmless. I cannot share this reasoning.
Experience teaches that jurors so often, as do we all, compromise about their decisions and when their area of choice is bounded on the one extreme by a constitutionally erroneous instruction about murder and on the other by "not guilty," we ourselves presume a great deal when we say that they did not commence their deliberations from the state's strongest point: defendant could be, because he used a deadly weapon, presumed to entertain malice and be guilty of murder.
"Harmless constitutional error" is to me self-contradictory and a concept with which I have great difficulty. I am disposed toward a purer approach: if it's constitutional error, it cannot be harmless.
NOTES
[1] We recognize that in the normal case there may be a considerable factual conflict between the State's and the defendant's case as to whether provocation existed, and in such event the issue is for the jury upon proper instruction. Here, the evidence was without conflict on this point and the court should have ruled out second degree murder as a matter of law under State v. Morris, 142 W.Va. 303, 95 S.E.2d 401 (1956); State v. Ponce, 124 W.Va. 126, 19 S.E.2d 221 (1942); State v. Galford, 87 W.Va. 358, 105 S.E. 237 (1920); and State v. Clifford, 59 W.Va. 1, 52 S.E. 981 (1906).
[2] One of the unusual features of Mullaney is that it has elevated an instructional error to a constitutional magnitude. See Taylor v. Kentucky, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978) (failure to instruct on presumption of innocence violates due process). Consequently, the resolution of whether the Mullaney-Pendry instruction is erroneous in a given case must be addressed within the framework of the doctrine of harmless constitutional error rather than under the usual rule that the verdict being rendered at a level different from the erroneous instruction renders the error nonprejudicial. State v. Putnam, W.Va., 205 S.E.2d 815 (1974); State v. Bail, 140 W.Va. 680, 88 S.E.2d 634 (1955); State v. Toler, 129 W.Va. 575, 41 S.E.2d 850 (1946). The rule in these latter cases would, however, make the failure in this case to withdraw the second degree murder verdict from the jury's consideration nonreversible error.
[3] "The Court instructs the jury that if they believe from the evidence in this case that the defendant stabbed and killed David Lee Hill, and that he, the said defendant, relies upon self defense to excuse him from such an act, the burden of showing such excuse is on the defendant, and to avail himself of such defense he must prove to the satisfaction of the jury by preponderance of the evidence, or it must appear from all the evidence and circumstances in the case that at the time he killed the said David Lee Hill, he believed, and had reasonable grounds to believe that he was in imminent danger of death or great bodily harm at the hands of the said David Lee Hill and that he killed the said David Lee Hill for the purpose of protecting himself from such apparent danger, believing and having reasonable grounds to believe at the time he killed the said David Lee Hill, that said killing was necessary in order to protect himself from death or great bodily harm at the hands of the said David Lee Hill, but the Court instructs the jury that the defendant acted at his peril, as the jury must pass upon his actions in the premises from all the facts and circumstances in the case."
[4] Fletcher, Two Kinds of Legal Rules: A Comparative Study of Burden-of-Persuasion Practices in Criminal Cases, 77 Yale L.J. 880, 902 (1968); see generally J. Wigmore, Evidence § 2483, et seq. (3rd ed. 1940) (as to judicial allocation of burden of proof).
[5] Obviously the issue of self-defense can enter the case, as here, by cross-examination of a state's witness. More frequently the defendant and his witnesses will inject the issue.
[6] We believe that the rule requiring that there be competent evidence tending to show self-defense, as stated in State v. Green, W.Va., 206 S.E.2d 923 (1974), comports with the reasonable doubt standard, but is better expressed as evidence sufficient to raise a reasonable doubt as to the defense of self-defense. This enables the trial court to determine from all the evidence the question of whether the self-defense issue is in the case for purposes of giving an instruction to the jury. Of course, if there is no evidence raising a reasonable doubt as to the self-defense issue, the State would not need to disprove the defense and no instruction need be given the jury. State v. Roberts, 88 Wash.2d 337, 562 P.2d 1259 (1977).
[7] In State v. Pendry, W.Va., 227 S.E.2d 210, 221 (1976), the statement was made that "the defense of self-defense, although required to be proved by a preponderance of the evidence [citations omitted] does not relieve the State from the obligation to prove every material element of the crime beyond a reasonable doubt." Pendry did not involve a self-defense instruction and consequently there was no need to consider the law in this area.
[8] The following instruction has been formulated in the federal practice to cover the defense of self-defense:

"If the defendant was not the aggressor, and had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his assailant, he had the right to employ deadly force in order to defend himself. By `deadly force' is meant force which is likely to cause death or serious bodily harm.
"In order for the defendant to have been justified in the use of deadly force in self-defense, he must not have provoked the assault on him or have been the aggressor. Mere words, without more, do not constitute provocation or aggression.
"The circumstances under which he acted must have been such as to produce in the mind of a reasonably prudent person, similarly situated, the reasonable belief that the other person was then about to kill him or to do him serious bodily harm. In addition, the defendant must have actually believed that he was in imminent danger of death or serious bodily harm and that deadly force must be used to repel it.
"If evidence of self-defense is present, the Government must prove beyond a reasonable doubt that the defendant did not act in self-defense. If you find that the Government has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, you must find the defendant not guilty. In other words, if you have a reasonable doubt whether or not the defendant acted in self-defense, your verdict must be not guilty." [E. Devitt and C. Blackmar, Federal Jury Practice and Instructions § 41.19 (3rd ed. 1977)]
[9] For a detailed explanation of the Supreme Court's decisions on retroactivity, see Beytagh, Ten Years of Non-Retroactivity: A Critique and a Proposal, 61 Va.L.Rev. 1557 (1975).