STATE OF WEST VIRGINIA

*v.*

DANIEL FRANKLIN SLONAKER

(No. 14920)

Decided June 9, 1981.

*Ward D. Stone, Jr.,* for appellant.

*Chauncey H. Browning,* Attorney General, *Thomas N. Trent,* Assistant Attorney General, for appellee.

HARSHBARGER, CHIEF JUSTICE:

A Monongalia County jury convicted Daniel Franklin Slonaker of second-degree murder for killing William H. Bishoff, Jr.

The body was discovered at 6:30 A.M., December 29, 1978, and by 1:00 P.M. state police were at Slonaker's home to take him to their barracks for questioning. (The two had been seen visiting bars together the night before.) He told

Trooper Wable that he had a pistol at home, that he believed it was a .357 caliber and that it had been stolen. The police knew that the cartridges found at the crime scene were .380 caliber.

A Trooper Brown was sent to get a description of Slonaker's house for a search warrant, then went to a magistrate's office to swear to an affidavit for the warrant. There, he was told that he was not the appropriate complainant because Trooper Wable was Slonaker's interrogator and had elicited the information upon which a warrant would be founded. Wable called the county prosecutor's office and was informed that a legal intern for the prosecutor was at the magistrate's office to help prepare the warrant. The intern and the magistrate's assistant prepared the warrant with assistance by telephone from the prosecuting attorney.

Sometime after Trooper Wable called the prosecutor's office, but while he was still questioning Slonaker, the magistrate called and questioned Wable about what Slonaker had told him, and it was decided that the magistrate would take the completed warrant to the police barracks for Wable to sign.

Meanwhile, the intern and magistrate's assistant prepared several drafts and then a final search warrant,[1]

---

[1] The pertinent part of the warrant was:

"... Daniel Slonaker did unlawfully *(and feloniously) wilfully, maliciously and deliberately slay, kill and murder one William Hale Bishoff and that the complainant has cause to believe and does believe that property,

. . .

Namely, firearms, handguns or pistol is concealed in a two-story house with a right front of brick and left front top being white siding, ... and that the grounds for probable cause for the issuance of this warrant are as follows: That in the course of an investigation of a homicide of William Hale Bishoff which took place December 29, 1978, in Monongalia County, West Virginia, the affiant has interviwed [sic] a suspect to the crime who has revealed the existence of a firearm (handgun) located at 904 Cottonwood Drive, Morgantown, Monongalia County, West Virginia, which said handgun is believed to be the murder weapon.

and an affidavit from the search warrant information, for Wable to sign.

The intern, magistrate and another officer took affidavit and warrant to the barracks, and the magistrate called Wable out of Slonaker's interrogation, took his oath, and asked:

> ... if I [Trooper Wable] had given Mr. Slonaker his rights before he gave me the information and if he was competent when he did and I told him he was and I went ahead and signed the warrant and [the magistrate] signed it.

The house was then searched by Lieutenant Cira and Trooper Brown. Apparently, the .380 handgun was never found because it was not introduced. Evidence produced by the searches was only spent and live .380 caliber cartridges.

## I.

Defendant moved to suppress evidence resulting from his confession because he was not read his Miranda rights and because he was under the influence of alcohol, drugs and lack of sleep. Judge Larry Starcher denied the motion, but defendant became aware of the search warrants problems. Thereafter, there was a hearing on defendant's motion to suppress evidence produced from the searches. Judge Starcher decided to admit the evidence, ordering:

> 1. That an agency did not exist between the Prosecuting Attorney's Office and the Magistrate issuing the search warrant and the Magistrate made an independent determination and evaluation of probable cause coming within the mandate of the Fourth Amendment that the Magistrate be neutral and detached as laid down in *Shadwick v. City of Tampa*, 407 U.S. 345 (1972) and *State v. Dudick*, 213 S.E.2d 458 (W.Va. 1975).

---

that the name of the person whose affidavit has been taken in support of the issuance of this warrant is

L. W. Wable, MDPS

. . .

Given under my hand this the 29th day of December, 1978.

/s/ Wade S. Tinney
Magistrate"

2. That probable cause existed for the issuance of the search warrants.

3. That the property to be seized was described in the search warrant with sufficient particularity so as not to violate the Fourth Amendment of the U.S. Constitution as set forth in *State v. Greer*, 130 W.Va. 159 (1947).

After the evidence was in, defendant moved for directed verdicts on first and second-degree murder, arguing that the state proved no malice or premeditation. Judge Starcher granted his motion on first-degree, finding no evidence of premeditation, but allowed a second-degree murder verdict to go to the jury.

## II.

We will not expound upon the history, purpose or effect, or serve as a citator for the reader to the multiple United States Supreme Court cases and scholarly treatises about search warrants and the Fourth Amendment. But we must examine the procedure used by the officers, prosecutor's office, and magistrate to decide whether it meets our constitutional guarantee in W. Va. Const. art. III, §6[2] that there be an independent evaluation of probable cause before a warrant is issued.

In *State v. Dudick*, 158 W.Va. 629, 213 S.E.2d 458 (1975), at Syllabus Point 2, the Court wrote:

The constitutional guarantee under W. Va. Const., Article III, §6 that no search warrant will issue except on probable cause goes to substance and not to form; therefore, where it is conclusively proved that a magistrate acted as a mere agent of the prosecutorial process and failed to make an independent evaluation of the circumstances surrounding a request for a warrant, the warrant

---

[2] W. Va. Const. art. III, §6:

"The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized."

will be held invalid and the search will be held illegal.

If the original warrant was invalid because the magistrate was an agent of the prosecutor, then the information gathered during the first search which led to the search and seizure authorized by the second warrant, was inadmissible. *State v. Stone*, 165 W.Va. 266, 268 S.E.2d 50 (1980), Syllabus Point 2.

In *Dudick*, a magistrate was considered to be a prosecutor's agent because he blatantly failed to test the reliability of a police informant: he used a policeman's probable cause determination. Our magistrate was not involved in preparation of affidavit or warrant; and his telephone conversation and later affirming questioning of Trooper Wable, while not extensive, was adequate to permit him to make an independent evaluation of probable cause.[3]

---

[3] We would impress upon magistrates, prosecutors and police that they must follow the procedures outlined in Code, 62-1A-3:

"A warrant shall issue only upon complaint on oath or affirmation supported by affidavit sworn to or affirmed before the judge or magistrate setting forth the facts establishing the grounds for issuing the warrant. If the judge or magistrate is satisfied that there is probable cause to believe that grounds therefor exist, he shall issue a warrant identifying the property and particularly describing the place, or naming or particularly describing the person, to be searched. The warrant shall be directed to the sheriff or any deputy sheriff or constable of the county, to any member of the department of public safety or to any police officer of the municipality wherein the property sought is located, or to any other officer authorized by law to execute search warrants. It shall state the grounds or probable cause for its issuance and the names of the persons whose affidavits have been taken in support thereof. It shall command the officer to search forthwith the person or place named for the property specified, to seize such property and bring the same before the judge or magistrate issuing the warrant. Such warrant may be executed either in the day or night." *See* Bench Book for West Virginia Magistrates, §V, Warrants.

An affiant must present sufficient facts in his complaint for the magistrate to find probable cause. After this determination the magistrate should have a search warrant prepared, accurately reflecting those facts that convinced the magistrate of probable cause.

(We would urge magistrates not to deliver warrants to a police barracks, because such may give appearance of impropriety.)

(There was, of course, no undisclosed informant. Information upon which the warrant was based came from the defendant.)

The description of items to be seized was sufficient. The first search warrant sought "firearms, handguns or pistol." The known existence of a gun in the home of a murder suspect is probable cause to search for it. Dragnet searches are improper, *State v. Greer*, 130 W.Va. 159, 42 S.E.2d 719 (1947), but a search for a murder weapon, described specifically to be a handgun or pistol, is certainly permissible.

## III.

What constitutes a sufficient showing of malice to justify a second-degree murder instruction?[4] Second-degree murder is the unlawful killing of another with malice, *State v. Bowles*, 117 W.Va. 217, 185 S.E. 205 (1936). "Methods for proving malice cannot be definitely prescribed because it is a subjective attitude, *State v. Gunter*, 123 W.Va. 569, 17 S.E.2d 46 (1941); however, [malice] may be inferred from the intentional use of a deadly weapon, *State v. Brant*, 162 W.Va. 762, 252 S.E.2d 901 (1979)." *State v. Ferguson*, 270 S.E.2d 166, 170 (1980). Malice cannot be inferred when the evidence affirmatively shows its absence. *State v. Brant*, 162 W.Va. 762, 252 S.E.2d 901 (1979).

Neither malice nor premeditation need exist for any appreciable time before the moment of killing. *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978); *State v. Green*, 157 W.Va. 1031, 206 S.E.2d 923 (1974); *State v. Burdette*, 135 W.Va. 312, 63 S.E.2d 69 (1951). We have disapproved an instruction that premeditation can exist only an instant prior to killing to sustain first-degree murder, but have not found it reversible error. *Edwards v. Leverette*, ____ W.Va. ____, 258 S.E.2d 436 (1979). An instruction that malice need not exist for any length of time is not reversible. *State v.*

---

[4] The Court instructed the jury:

"The jury is further instructed that it is not essential that malice should have existed for any length of time before the killing, but it is sufficient if it springs into the mind the very instant the accused did the killing."

*Green, supra* 206 S.E.2d, at 926-27; *State v. Panetta,* 85 W. Va. 212, 101 S.E. 360 (1919). We believe the instruction in footnote 4 would be improved if after the first clause it concluded that "it is sufficient if malice springs into the mind *before* the accused did the killing."

There was substantial evidence, seen most favorably to the prosecution, *State v. Demastus,* 165 W.Va. 572, 270 S.E.2d 649, 657 (1980); *State v. Ferguson, supra; State v. Starkey, supra* 244 S.E.2d, at 221, to justify a jury finding malice and convicting of second-degree murder. Slonaker admitted using a deadly weapon. He shot several times; the victim was unarmed. There was no testimony of battery or assault upon him. The jury apparently was not persuaded that he was defending himself.[5]

*Affirmed.*

d

---

[5] Slonaker's testimony was that he met Bishoff by chance at a pool hall on the night of December 28, 1978. They had been casual acquaintances since high school, and Slonaker asked if Bishoff had a car and would take him home. They left the pool room, visited a mutual friend, went to the Slonaker home to eat and get money. They then resumed their evening entertainment, bought beer for later, and went "barhopping", "on" Slonaker. He swore there was no animosity or ill will during the evening. He had been drinking continuously that evening and had taken several drugs including marijuana, eight to ten phenobarbital, and Dimetapp. He testified he was a marijuana dealer and, as he always did, carried a pistol for protection.

After all bars closed, Bishoff drove Slonaker to the Westover, West Virginia incinerator plant where they intended to finish their beer. Slonaker spilled beer in the car, got out, and Bishoff followed and came toward him. Frightened, Slonaker drew his pistol and fired several shots aimed at Bishoff's legs; but they hit him elsewhere. Slonaker panicked, and left the scene without checking whether Bishoff was dead or alive.