380 S.E.2d 203

**STATE of West Virginia**

v.

**James Edgar BATES.**

No. 18341.

Supreme Court of Appeals of West Virginia.

April 18, 1989.

---

Albright, Bradley & Ellison, Joseph P. Albright, Jr., Parkersburg, for James Edgar Bates.

Charles G. Brown, III, Atty. Gen., Charleston, for State.

Per Curiam:

The defendant in this proceeding, James Edgar Bates, was sentenced to from one-to-five years in the State Penitentiary for manslaughter, one-to-five years in the State Penitentiary for possession of marijuana with intent to deliver, and from two-to-ten years in the State Penitentiary for distribution of marijuana to a person under age eighteen. The sentences were imposed so as to run consecutively. On appeal, the defendant claims that he introduced evidence which demonstrates that he acted in self-defense at the time of the killing resulting in the manslaughter charge, and he suggests that under the circumstances the manslaughter verdict was unsupported by the evidence. He also claims that a search warrant employed by police officers in investigating this case was issued by a magistrate who did not act in a neutral and detached manner and that the description of the property to be seized in the warrant was too broad and contained no meaningful restrictions. Finally, he claims that the mother of a police officer who served on the jury panel should have been excluded because of her relationship to the police officer. After reviewing the record, this

Court believes that the State failed to rebut the defendant's claim of self-defense, and that for that reason the defendant's manslaughter conviction was improper. The Court also believes that the defendant's other assertions are without merit. Accordingly, the judgment of the Circuit Court of Wood County, insofar as it relates to the defendant's manslaughter conviction, is reversed.

According to evidence adduced, the defendant, James Edgar Bates, on occasion had sold marijuana to Billy Welch and Tommy Welch prior to the incident giving rise to the charges in the present case. The Welches also knew that the defendant received a social security check.

On February 2, 1985, Billy Welch, David Curd, and Richard Stevens decided to rob the defendant of his social security money. They called Billy Welch's cousin, Thomas Welch, and together the Welches, David Curd, and Richard Stevens developed a plan to commit the robbery. The plan was for the Welches to go to the defendant's apartment to purchase marijuana. Once at the apartment, they were to distract the defendant and leave the apartment door unlocked so that Richard Stevens and David Curd could sneak inside and commit the robbery. The four robbers had two guns. David Curd took one gun and Billy Welch took the other.

Pursuant to the plan, Billy and Thomas Welch procured entry to the defendant's apartment to purchase marijuana. In the process, the door to the apartment was unlocked. While the Welches were distracting the defendant with the purchase, David Curd and Richard Stevens entered the apartment through the unlocked door and David Curd stood outside the door of the room where the purchase was taking place. When Billy Welch had completed the purchase, he opened the door. At that time David Curd was standing in it with a drawn gun in his hand. The defendant ran into the next room, and David Curd pursued him. In the course of the proceeding, the defendant pulled a gun from his back pants pocket and fired three shots at David Curd, striking him once. David Curd ran

out of the apartment, down the stairs, screaming and yelling. He later collapsed on the front campus of Parkersburg High School and died of a gunshot wound before paramedics arrived.

Subsequent to the incident, Parkersburg City Police officers canvassed the area. A resident told them that she had heard people screaming and yelling as they ran down the stairs at 1106 24th Street, the defendant's residence, moments before David Curd's body was found. Later, Blackjack, a Parkersburg City Police dog, was able to track the victim's scent from the high school campus to the apartment building in the rear of 1106 24th Street.

Following this initial investigation, Parkersburg Police Detective Ronald Fluharty at police headquarters filled out an affidavit for a search warrant. He also filled out a form entitled "Affidavit and Complaint for Search Warrant" and a search warrant. Detective Fluharty later presented the completed documents to Magistrate J. Edward Florence. The magistrate did not type any information on the form "Affidavit and Complaint," the affidavit, or the search warrant itself. The magistrate did question Detective Fluharty about the circumstances leading to his request for the warrant, and the magistrate then signed the search warrant.

The search warrant was subsequently executed, and the defendant's apartment was searched. During the search, the police seized a number of items, including several wood fragments, a piece of tile covered with blood, a box of .32 automatic cartridges, a .32 caliber handgun, a bucket where the gun was found, a slab containing lead, and a brown door with holes. Also, several plastic bags of chopped, green plants, which were later proved to be marijuana, were seized.

At the defendant's subsequent trial, Billy and Tommy Welch and Richard Stevens, who had entered into plea bargain agreements with the State, and who had planned and participated in the attempted robbery, testified against the defendant. The defendant himself also admitted killing David Curd, but took the position that he had shot

in self defense. He also admitted the possession and delivery of marijuana.

At the conclusion of the trial, the trial court found the defendant guilty of manslaughter, possession of marijuana with intent to deliver, and distribution to a person under the age of eighteen.

In the present proceeding, the defendant's first contention in that evidence adduced during his trial overwhelmingly shows that he shot the victim in self-defense and that under the circumstances his manslaughter conviction is unsupported by the evidence.

■ In *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978), this Court indicated that a criminal defendant charged with homicide has the burden of introducing some evidence showing that he acted in self-defense. The Court also held, however, in syllabus point 4, that:

> Once there is sufficient evidence to create a reasonable doubt that the killing resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense.

The Court has recognized that where an individual is attacked in his own home he has the right to defend himself without retreating. *State v. Phelps*, 172 W.Va. 797, 310 S.E.2d 863 (1983); *State v. W.J.B.*, 166 W.Va. 602, 276 S.E.2d 550 (1981); *State v. Preece*, 116 W.Va. 176, 179 S.E. 524 (1935). A number of older cases indicate that this right exists even if at the time of the attack the defendant is engaged in an illegal business in the house. For example, in *People v. Wilcox*, 245 N.Y. 404, 157 N.E. 509 (1927), the New York court recognized that the fact that the defendant Wilcox was involved in illegally selling liquor in his house did not deprive him of the right to defend himself in the house. In *Russell v. State*, 61 Fla. 50, 54 So. 360 (1911), the Florida court ruled that a woman conducting a prostitution business in her home contrary to the law still had the right to defend herself in her home without retreating. The court indicated that a person's dwelling house is a castle of defense for himself and those rightfully in it, and

when another attacks or invades in a threatening manner, under such circumstances that the owner has reason to believe, and does believe, that he is in danger of losing his life or suffering great bodily harm, he is not obliged to retreat, but may stand his ground, and meet any attack made upon him with such force as, under all the circumstances, he has reason to believe, and does believe, is necessary to save his life or protect himself from great bodily harm; and this rule is applicable to all persons, without respect to their moral conduct in other respects. The consensus rule has been stated in Annot. 2 A.L.R. 518, 519 (1919), as follows:

> The rule ... would seem to be that the right of a person to defend himself, without retreating, exists in all cases where the attack is made in his dwelling house, whether or not an unlawful business is conducted there....

■ In the present case the evidence shows conclusively that the victim of the crime, David Curd, appeared in the defendant's house with a drawn pistol in an attempt to rob the defendant. The evidence also shows that Mr. Curd pursued the defendant with the pistol after the defendant fled into another room. At the time of the shooting Mr. Curd had his pistol pointed at the defendant, and there is some suggestion that his finger might have been on the hammer of the pistol. All these events occurred in a very short period of time, characterized by one witness as being about thirty-five seconds. Certain evidence suggests that the defendant's back was almost against the wall of his apartment at the time of the shooting.

This Court believes that the evidence adduced certainly establishes a *prima facie* case of self-defense for the defendant. Once such a case is established, it was incumbent upon the State, under the rule set forth in *State v. Kirtley, supra*, to prove beyond a reasonable doubt that the defendant did not act in self-defense.

In reviewing the evidence, this Court cannot find that the State adduced testimony or other evidence showing that the defendant acted in any manner other than

self-defense. There is absolutely no evidence that the defendant planned to shoot David Curd before he appeared in the defendant's home with a drawn pistol. The events which occurred in the defendant's home occurred in a very short period of time. When initially confronted, the defendant attempted to flee rather than shoot, even though there is evidence he had a pistol in his pants. This militates against a conclusion that he acted with malice or premeditation or even recklessly or in the heat of passion. He shot only after he had retreated to no avail. Overall, the facts lead the Court to conclude that the State failed to meet its burden of proof and that under the rule in syllabus point 4 of *State v. Kirtley, supra,* the defendant's conviction should be reversed.

■ The defendant next claims that Magistrate Florence, in issuing the search warrant, did not act in a proper, neutral, and detached manner and that, therefore, the trial court erred in allowing any evidence seized under the warrant to be introduced into evidence.

The defendant claims that after the initial investigation in the case police detective Ronald Fluharty went to Parkersburg Police headquarters and dictated a two-page affidavit for issuance of a search warrant. Also, a "affidavit and complaint for a search warrant" were filled out at the headquarters. The search warrant itself was completed at the headquarters before any of the documents were presented to a magistrate.

After the documents were completed, according to the defendant, all that had to be done was for issuance of the warrant was for Detective Fluharty to sign the documents and for the magistrate to sign the warrant. The defendant claims that the magistrate did not type any of the information on the form affidavit and complaint, the two-page affidavit prepared by Detective Fluharty, or the search warrant itself. He also claims that the magistrate did not direct the police office in filling out the search warrant. He states that, in essence, the only thing that the magistrate did was

to watch Detective Fluharty sign the affidavits under oath.

A review of the record indicates that after reading the affidavit and warrant prepared by Officer Fluharty, Magistrate Florence actually requested that Office Fluharty relate the circumstances leading to his request for a search warrant. Upon information given under oath, Magistrate Florence then issued the warrant.

In *State v. Slonaker,* 167 W.Va. 97, 280 S.E.2d 212 (1981), this Court indicated that the procedure for obtaining a warrant was constitutionally adequate even where the magistrate was not involved in preparation of affidavit and warrant if his later affirmative questioning of officer, while not extensive, was adequate to permit him to make an independent evaluation of probable cause.

In the case presently before the Court, there is no evidence that there was involvement of the prosecutor's office with the magistrate's office in the preparation of the documents. Officer Fluharty prepared his affidavit wholly independently of the magistrate's office. Later, however, under oath, he testified as to facts supporting issuance of the search warrant. The Court believes, however, that like the magistrate in *State v. Slonaker, supra,* Magistrate Florence did act in a sufficiently independent manner, by conducting an examination of Officer Fluharty under oath, to validate the search warrant.

■ The defendant next claims that the description of the property to be seized in the search warrant was too broad and contained no meaningful restriction on the police department's scope of search. He argues that the trial court, therefore, erred in allowing any of the evidence seized under the search warrant to be introduced into evidence.

The search warrant issued by Magistrate Florence authorized the executing officers to seize "a gun; blood; evidence or signs of a struggle; and any and all further evidence which may therein be found." The property to be searched was described as the defendant's apartment.

During the hearing later conducted to suppress evidence seized under the war-

rant, the trial court ruled that the portion of the warrant which authorized police officers to search and seize "all further evidence which was therein to be found" was a catch-all and vague. The court ordered all property seized under that clause suppressed.

The circumstances leading to the issuance of the search warrant revealed that police officers found David Curd's body with a bullet wound. The police officers, from the existence of the wound, could surmise that Mr. Curd had been shot with a gun. As a result of the shooting Mr. Curd was bleeding. Further investigation revealed that there had been sounds of a struggle emanating from the vicinity of the defendant's apartment. A police dog tracked the scent of the deceased to that apartment.

This Court believes that, based on the information available to the police officers, it was reasonable for the officers to search for a gun, blood, and evidence of a struggle. Those items were defined with reasonable particularity in the search warrant.

In executing the search warrant, the police officers found several fragments of woods, a piece of tile covered with blood, a box of .32 automatic cartridges and a .32 caliber handgun. They also seized the bucket where the gun was found, a slab containing lead, and a brown door with holes. They also located marijuana plants in the bottom of a trash can.

Overall, the Court believes that the defendant's assertion relating to the search warrant being too broad and containing no meaningful restriction on the police department's scope of search is without merit.

Finally, the defendant claims that the mother of a police officer who was a member of the police agency investigating the crime served on the initial panel of jurors. He claims that this person should have been *per se* disqualified to sit as a juror and that the trial court erred in not striking her from the jury panel.

One of the individuals who constituted the venire in this case, Helen Gregg, was the mother of Delbert Gregg, a Parkersburg City Police officer. During voir dire Mrs. Gregg revealed her relationship, but indicated that she had never discussed the defendant's case with her son and that she did not discuss police business with him. Her son did not live with her. After learning of the circumstances, the trial court offered defense counsel an opportunity to question Mrs. Gregg further. Defense counsel declined.

In *State v. Beckett,* 172 W.Va. 817, 310 S.E.2d 883 (1983), this Court explored the question of when a prospective juror's consanguineal relationship with a law enforcement officer disqualifies the juror from serving. The Court concluded, in syllabus point 6, that:

A prospective juror's consanguineal, marital or social relationship with an employee of a law enforcement agency does not operate as a per se disqualification for cause in a criminal case unless the law enforcement official is actively involved in the prosecution of the case. After establishing that such a relationship exists, a party has a right to obtain individual voir dire of the challenged juror to determine possible prejudice or bias arising from the relationship.

In the present case there is no evidence whatsoever that Delbert Gregg, prospective juror Helen Gregg's son, was in any way involved in the defendant's case. After Mrs. Gregg's relationship with Delbert Gregg was revealed, the trial court afforded defense counsel an opportunity to engage in voir dire.

The facts as developed fail to establish possible prejudice or bias resulting from prospective juror Gregg's relationship. Under the rule in syllabus point 6 of *State v. Beckett, supra,* the trial court did not err in refusing to strike prospective juror Gregg for cause.

For the reasons stated, the judgment of the Circuit Court of Wood County, insofar as it relates to the defendant's manslaughter conviction, is reversed and set aside. In all other respects it is affirmed.

Reversed in part; affirmed in part.