GLEN N. BOWMAN, SR.

*v.*

BOBBY J. LEVERETTE, *Warden,*

*West Virginia Penitentiary*

(No. 14430)

Decided March 19, 1982.

*Gold & Khourey and Louis H. Khourey* for plaintiff,

*Chauncey H. Browning,* Attorney General, *and Thomas N. Trent,* Assistant Attorney General, for defendant.

MCHUGH JUSTICE:

This is an appeal by Glen N. Bowman, Sr., from an order of the Circuit Court of Marshall County, entered on December 13, 1978, denying his petition for a writ of habeas corpus. The appellant assigns the summary dismissal of his petition as error and asks this Court to consider his substantive claims to relief.

Glen N. Bowman, Sr., is currently serving a life sentence in the West Virginia Penitentiary at Moundsv-

ille. He was sentenced by an order of the Intermediate Court of Kanawha County, dated June 13, 1969, to life imprisonment after a jury returned a verdict of guilty of first degree murder. That order was appealed and this Court affirmed the judgment in *State v. Bowman*, 155 W. Va. 562, 184 S.E.2d 314 (1971). The facts of the criminal case which underlie this post-conviction relief proceeding are fully set forth in that opinion.

## I. THE PROCEDURAL QUESTION

On September 26, 1977, this Court refused to hear a petition for a writ of habeas corpus filed by Glen N. Bowman, Sr. That petition sought relief based upon *State v. Pendry*, 159 W. Va. 738, 227 S.E.2d 210 (1976). The petition was filed again on June 6, 1978, after this Court's decision in *Jones v. Warden*, 161 W. Va. 168, 241 S.E.2d 914 (1978). We once again refused to entertain the petition. On June 27, 1978, Bowman filed a petition for habeas corpus in the Circuit Court of Marshall County that advanced substantially the same contentions, and relied substantially upon the same grounds, as those petitions which previously had been refused by this Court. On December 13, 1978, the circuit court held that this Court had refused the contentions put forth in the appellant's petition and that such refusal was *res judicata* to the contentions and grounds in the petition before it. On that basis the circuit court denied the relief sought and this appeal followed.

The appellant argues that the denial of relief in the Circuit Court of Marshall County, on the grounds that the summary refusal by this Court of similar contentions was *res judicata*, was error. The appellant says that under *W. Va. Code*, 53-4A-1(b) [1967], a contention raised in a post-conviction habeas corpus petition is only finally adjudicated when there has been a decision on the merits after a full and fair hearing.

The West Virginia Legislature has provided for post-conviction habeas corpus relief in *W. Va. Code*, 53-4A-1 [1967], *et seq.* The scope of such relief is set forth in *W. Va. Code*, 53-4A-1(a) [1967]:

Any person convicted of a crime and incarcerated under sentence of imprisonment therefor who contends that there was such a denial or infringement of his rights as to render the conviction or sentence void under the Constitution of the United States or the Constitution of this State, or both, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under the common-law or any statutory provision of this State, may, without paying a filing fee, file a petition for a writ of habeas corpus ad subjiciendum, and prosecute the same, seeking release from such illegal imprisonment, correction of the sentence, the setting aside of the plea, conviction and sentence, or other relief, if and only if such contention or contentions and the grounds in fact or law relied upon in support thereof have not been previously and finally adjudicated or waived in the proceedings which resulted in the conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings which the petitioner has instituted to secure relief from such conviction or sentence. Any such petition shall be filed with the clerk of the supreme court of appeals, or the clerk of any circuit court, said supreme court of appeals and all circuit courts of this State having been granted original jurisdiction in habeas corpus cases by the Constitution of this State, or with the clerk of any court of record of limited jurisdiction having criminal jurisdiction in this State. . . .

This subsection allows for post-conviction habeas corpus review "if and only if" the contention or contentions raised by the petitioner have not been previously and finally adjudicated or waived in the petitioner's criminal trial and appeal or in previous habeas corpus proceedings. We have considered what constitutes a waiver of contentions in the recent case of *Losh v. McKenzie*, _____ W. Va.

\_\_\_\_, 277 S.E. 606 (1981). The case presently before us raises the question of what constitutes a final adjudication of contentions presented in a petition for post-conviction habeas corpus relief. *W. Va. Code,* 53-4A-1(b) [1967], directly addresses that issue:

> For the purposes of this article, a contention or contentions and the grounds in fact or law relied upon in support thereof shall be deemed to have been previously and finally adjudicated only when at some point in the proceedings which resulted in the conviction and sentence, or in a proceeding or proceedings on a prior petition or petitions filed under the provisions of this article, or in any other proceeding or proceedings instituted by the petitioner to secure relief from his conviction or sentence, there was a decision on the merits thereof after a full and fair hearing thereon and the time for the taking of an appeal with respect to such decision has not expired or has expired, as the case may be, or the right of appeal with respect to such decision has been exhausted, unless said decision upon the merits is clearly wrong.[1]

It is not denied that the three contentions advanced by the appellant in this case were raised and resolved against him at his trial in the Intermediate Court of Kanawha County and on his appeal after his conviction. *See State v. Bowman, supra.* The appellant, however, argues that *W. Va. Code,* 53-4A-1(d) [1967], applies to his case and, therefore, we should consider the substance of his contentions. *W. Va. Code,* 53-4A-1(d) [1967], provides:

---

[1] We note that *W. Va. Code,* 53-4A-3 [1971], provides, in part:

(a) If the petition, affidavits, exhibits, records and other documentary evidence attached thereto . . . show to the satisfaction of the court that the petitioner is entitled to no relief, or that the contention or contentions and grounds (in fact or law) advanced have been previously and finally adjudicated or waived, the court shall by order entered of record refuse to grant a writ, and such refusal shall constitute a final judgment. . . .

*See also W. Va. Code,* 53-4A-7 [1967].

For the purposes of this article, and notwithstanding any other provisions of this article, no such contention or contentions and grounds shall be deemed to have been previously and finally adjudicated or to have been waived where, subsequent to any ... proceeding or proceedings in which said question otherwise may have been waived, any court whose decisions are binding upon the supreme court of appeals of this State or any court whose decisions are binding upon the lower courts of this State holds that the Constitution of the United States or the Constitution of West Virginia, or both, impose upon State criminal proceedings a procedural or substantive standard not theretofore recognized, if and only if such standard is intended to be applied retroactively and would thereby affect the validity of the petitioner's conviction or sentence.

A review of the appellant's substantive claims to relief, which were briefed and argued on this appeal, reveal them to be without merit under the standards set in these statutes. The circuit court's dismissal of the writ was, therefore, not error because *W. Va. Code*, 53-4A-1(d) does not apply to this case. We affirm the judgment of the Circuit Court of Marshall County.

## II. THE SUBSTANTIVE ISSUES

In his petition for post-conviction habeas corpus relief, the appellant, Glen N. Bowman, Sr., as the basis upon which he seeks relief, asserts that three erroneous instructions were given to the jury at his trial on the first degree murder charge. We will consider each instruction in order.

### A. *State's Instruction Number Four*

The State's instruction number four read:

The Court instructs the jury that mere words, however 'insulting or opprobrious' they may be, communicated directly or indirectly to the defendant, will neither justify or [sic] excuse the defendant from the commission of an assault upon

a person, and as a matter of law, where the defendant has committed such an assault with a deadly weapon, proof that the victim or his wife uttered such words is not sufficient provocation to justify such an assault.

The appellant argues that this instruction violates the principle of *State v. Pendry, supra,* by relieving the State of its burden of proof on a material element of the crime charged. In *State v. Pendry* we held, in syllabus point 4:

In a criminal prosecution, the State is required to prove beyond a reasonable doubt every material element of the crime with which the defendant is charged, and it is error for the court to instruct the jury in such a manner as to require it to accept a presumption as proof beyond a reasonable doubt of any material element of the crime with which the defendant is charged or as requiring the defendant either to introduce evidence to rebut the presumption or to carry the burden of proving the contrary.

State's instruction number four did not use or create any presumption. The instruction is a correct statement of the law on the point in this jurisdiction. *See State v. Toler,* 129 W. Va. 575, 41 S.E.2d 850 (1946); Syl. pt. 7, *State v. Snider,* 81 W. Va. 522, 94 S.E. 981 (1918). The instruction did not relieve the State of any material element of its burden of proof not did it shift any burden to the appellant. It was not error on the part of the trial judge to give that instruction. This assignment of error was finally adjudicated on the appellant's original appeal. Because this instruction is not invalidated by *State v. Pendry, supra,* the trial judge's dismissal of the contention was proper under *W. Va. Code,* 53-4A-1 [1967], *et seq.*

### B. *State's Instruction Number Five*

The State's instruction number five read:

The Court instructs the jury that if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, Glen N. Bowman, Sr., shot, wounded and killed Thomas Freeman Hart, and that he, the said Glen N. Bowman, Sr.,

relies upon self-defense to excuse him from such act, the burden of showing such excuse is on the defendant, and to avail him of such defense he must prove to the satisfaction of the jury by a preponderance of the evidence, or it must appear from all the evidence and circumstances in the case that at the time he shot and wounded the said Thomas Freeman Hart he believed and had reasonable grounds to believe that he was in imminent danger of death or great bodily harm at the hands of the said Thomas Freeman Hart, for the purpose of protecting himself from such apparent danger, believing and having reasonable grounds to believe at the time he shot and wounded the said Thomas Freeman Hart that said shooting and wounding was necessary in order to protect himself from death or great bodily harm at the hands of the said Thomas Freeman Hart, but the Court instructs the jury that the defendant acted at his peril, as the jury must pass upon all his actions in the premises, from all the facts and circumstances of the case.

This instruction, relating to self-defense, was disapproved for the first time by this Court in *State v. Kirtley*, ___ W. Va. ___, 252 S.E.2d 374 (1979), where we held, at syllabus point 4: "Once there is sufficient evidence to create a reasonable doubt that the killing resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense." The disapproval of the type of instruction given at Bowman's trial was based, however, on a reinterpretation of the "appropriate judicial balance of the burden of proof of self-defense." 252 S.E.2d at 380. We made it clear that the rule announced in the case was "not bottomed on constitutional due process principles." 252 S.E.2d at 381. We also explicitly held that the decision was not to be applied retroactively. 252 S.E.2d at 381, 382. We recently reaffirmed this holding in *State v. Gangwer*, ___ W. Va. ___, 283 S.E.2d 839 (1981), where we said: "Clearly, the discussion in *Kirtley* regarding retroactivity was designed to preclude 'full retroactivity' so that the *Kirtley* rule could not be applied by way of a collateral

attack in habeas corpus on a final conviction." 283 S.E.2d at 842.[2] We abide by those decisions today and find, therefore, that the instruction here complained of, although erroneous under current law after *State v. Kirtley*, is not a basis upon which post-conviction relief may be properly granted under *W. Va. Code*, 53-4A-1(d) [1967].[3] The trial judge's dismissal of this contention was, therefore, proper. *State v. Kirtley* was not based on the federal or state constitution and was not intended to be applied retroactively.

### C. *State's Instruction Number Six-a*

The State's instruction number six-a read: "The Court instructs the jury that the law is that a person is presumed to intend that which he does or which is the natural and necessary consequence of his own act." There is no question that this presumption instruction, were it to be given in a trial today, would violate a defendant's right to due process of law as that right is now understood. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct.

---

[2] "Full retroactivity" was defined, in syllabus point 2 of *State v. Gangwer, supra,* as follows: "The concept of 'full retroactivity' in a criminal case ordinarily means that the new rule is available not only for those cases in litigation or on appeal where the point has been preserved but is also available by way of collateral attack on a final judgment through a writ of habeas corpus."

[3] Even if *State v. Kirtley* was applied retroactively, it would have no application to the appellant's case. The defendant did not meet the threshold standard of sufficient evidence to create a reasonable doubt. *See State v. Bowman*, 155 W. Va. at 566-567, 184 S.E.2d at 316-317:

> A reading of all the testimony in this case leads us to believe that the verdict of the jury of murder in the first degree was correct based on the evidence and circumstances of this case and is amply supported by the evidence. . . .
>
> The defendant attempts to rely upon self-defense, but the elements of self-defense are so lacking that the jury could reasonably, under the facts of this case, find that there was no self-defense of defendant or his wife involved. . .
>
> [I]n the instant case the victim made no threats and his only 'violent' actions were to come on defendant's porch at a rapid pace and reach toward the door.

Hence, it is clear that this contention was considered and finally adjudicated upon the defendant's original appeal.

2450, 61 L.Ed.2d 39 (1979); *State v. O'Connell*, 163 W. Va. 366, 256 S.E.2d 429 (1979). Due process is, however, the "least frozen concept of our law—the least confined to history and the most absorptive of powerful social standards of a progressive society." *Griffin v. Illinois*, 351 U.S. 12, 20-21, 76 S.Ct. 585, 591, 100 L.Ed. 891, 900 (1956) (Frankfurter, J., concurring).[4]

The appellant argues that the instruction in this case was erroneous under *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *State v. Pendry*, *supra*, and that those cases have been accorded full retroactive application in *Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), and *Jones v. Warden*, *supra*. We find, however, that *Mullaney v. Wilbur* and *State v. Pendry* are distinguishable.

### 1. *Mullaney v. Wilbur* and *State v. Pendry* distinguished

The United States Supreme Court, in *Mullaney v. Wilbur*, *supra*, invalidated a jury instruction which said that "malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation." 421 U.S. at 686, 95 S.Ct. at 1883. The specific wording of the instruction was not reported.[5] The

---

[4] *See also Moyer v. Peabody*, 212 U.S. 78, 84, 29 S.Ct. 235, 236, 53 L.Ed. 410, 416 (1909), where Justice Oliver Wendell Holmes, Jr., said: "[W]hat is due process of law depends on circumstances. It varies with the subject-matter and the necessities of the situation."

[5] Although the instruction in *Mullaney* was not reprinted in the text of the Supreme Court's opinion, it was reported in the First Circuit's opinion. It read, in part:

In all cases where the unlawful killing is proved beyond a reasonable doubt, and where there is nothing in the circumstances of the case to explain, qualify or palliate the action, the law presumes it to have been done with malice aforethought. And if the accused, that is the defendant, would reduce the crime below the degree of murder, the burden is upon him to rebut the inference which the law raises from the act of killing, by evidence in defense. ... [I]t means that from all the evidence in the case he must be able to satisfy you by a fair preponderance of the evidence that ... although he killed and although he killed

Supreme Court held that the instruction was a violation of due process because it shifted the burden of proof to the defendant on a material element of the offense with which he was charged.

This Court followed *Mullaney v. Wilbur, supra,* in *State v. Pendry, supra,* where we said the following instruction was not proper:

> The Court instructs the jury that the law is that a man is taken to intend that which he does, or which is the natural and necessary consequences of his own act; and, therefore, if they believe from the evidence that Parker Lee Pendry shot and killed the deceased, Cecil Hagerman, by the deliberate use of an instrument likely to produce death, under the circumstances, then the presumption of the law, arising in absence of proof to the contrary, is that he intended the consequences that resulted from said use of said deadly instrument.

227 S.E.2d at 218. *State v. Pendry,* at the time it was decided, was given only limited retroactive effect. 227 S.E.2d at 224.

In *Hankerson v. North Carolina, supra,* the United States Supreme Court, gave *Mullaney v. Wilbur, supra,* full retrospective application. The instruction in *Hankerson v. North Carolina* read:

> If the State proves beyond a reasonable doubt or it is admitted that the defendant intentionally killed Gregory Ashe with a deadly weapon, or intentionally inflicted a wound upon Gregory Ashe with a deadly weapon, that proximately caused his death, the law raises two presumptions; first, that the killing was unlawful, and second, that it was done with malice. ... Then there will be some other things I will charge you about, but, nothing else appearing, if you are

---

unlawfully, if such is the case, he killed in the heat of passion upon sudden provocation. ...
473 F.2d 943, 944.

satisfied of those two things beyond a reasonable doubt then you would find the defendant guilty of second degree murder. . . . [I]n order to excuse his act altogether on the grounds of self-defense, the defendant must prove not beyond a reasonable doubt but simply to your satisfaction that he acted in self-defense.

432 U.S. at 236-237, 97 S.Ct. at 2342.

This Court, in *Jones v. Warden, supra,* followed *Hankerson v. North Carolina, supra,* and extended full retroactive effect to our holding in *State v. Pendry, supra.* The instruction in *Jones v. Warden* said:

The Court instructs the jury that the law is that a man is taken to intend that which he does, or which is the natural and necessary consequences of his own act; and, therefore, if they believe from the evidence that Roger Dale Jones shot and killed the deceased, Crockett Boothe, by the deliberate use of an instrument likely to produce death, under the circumstances, then the presumption of law, arising in absence of proof to the contrary, is that he intended the consequences that resulted from said use of said deadly instrument.

241 S.E.2d at 915.

We must compare the *Mullaney v. Wilbur* type instruction with the *Sandstrom v. Montana* type instruction. If they are the same, we need go no further to hold for the appellant. The type of instruction found in *Sandstrom v. Montana, supra, State v. O'Connell, supra,* and in this case, is, however, different from those found in the four cases discussed above. In this case the trial judge simply instructed the jury that "the law is that a person is presumed to intend that which he does or which is the natural or necessary consequences of his own act."[6]

---

[6] The jury in this case was also instructed as follows:

[T]he State [has] the burden of proving every element of the crime charged and the accused guilty beyond a reasonable doubt. There is no shifting of this burden, as it remains upon the

600

The instruction in this case, like those in *Sandstrom v. Montana, supra,* and *State v. O'Connell, supra,* did not contain the detailed recitation of facts that is found in the instructions in the *Mullaney* line of cases. The instruction here did not emphasize, or even mention, the use of a deadly weapon or instrument.

Even more significant, however, is that in each of the instructions in the *Mullaney* line of cases the burden of proof was explicity shifted to the defendant, i.e., the jury was instructed that there was an obligation on the part of the defendant to disprove some aspect of the case or else a presumption would provide that element of the State's case. That is not the situation found in the case presently before us or in *Sandstrom v. Montana, supra,* and *State v. O'Connell, supra.* Indeed, in the case here under consideration, the jury was forcefully instructed that the defendant had no burden whatsoever and that the State had it all. *See* n. 6, *supra.*

Another important distinction is that, although the substantive issue decided in *Sandstrom v. Montana* and *State v. O'Connell* is similar to the substantive issue decided in *Mullaney v. Wilbur* and *State v. Pendry,* the basis of the holding in *Sandstrom* and *O'Connell* was different. The instruction in *Sandstrom v. Montana,* unlike the one in *Mullaney v. Wilbur,* did not explicitly shift the burden of proof to the defendant; nor was the *Sandstrom* instruction held to be a conclusive presump-

---

State throughout the whole trial. The accused is not required to prove his innocence. . . .

The Court instructs the jury that the supreme law of the land presumes every person charged with crime to be innocent until the State has established his guilt by evidence so strong, so clear and so conclusive that there is left in your minds no reasonable doubt as to his guilt. This presumption is an abiding presumption and goes with the defendant throughout the entire case and applies at every stage thereof. And in this connection, you are instructed that it is never sufficient that the defendant, upon speculative theory or conjecture, may be guilty; or that by the preponderance of the testimony, his guilt is more probable than his innocence; for until his guilt has been proved beyond all reasonable doubt as charged in the indictment, the presumption of innocence still applies and you must acquit him.

tion which would have fallen under *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), and *United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). The United States Supreme Court, however, found that there was a danger that the "jury may have interpreted the . . . instruction as constituting either a burden-shifting presumption like that in *Mullaney*, or a conclusive presumption like those in *Morissette* and *United States Gypsum Co. . . .*" 442 U.S. at 524, 99 S.Ct. at 2459. The key element was not what was said to the jury so much as the possibility that the jury might have misunderstood what was said. The Supreme Court, on that basis, held the giving of the instruction to be error. Similar reasoning was used in *State v. O'Connell*, *supra.* The type of instruction used at Bowman's trial in 1969 is, therefore, different from those used in the *Mullaney* line of cases and must be analyzed under *Sandstrom v. Montana* and *State v. O'Connell* rather than under *Mullaney v. Wilbur* and *State v. Pendry.*

## 2. The Issue

The *Mullaney v. Wilbur* type instruction, and the holding in that case, is distinguishable from the holding and type of instruction found in *Sandstrom v. Montana.* The specific issue to be decided in the case before us, therefore, is whether the holding of *Sandstrom v. Montana* and *State v. O'Connell* is to be applied retroactively by way of post-conviction habeas corpus to a case in which judgment was entered a decade prior to the decisions in those cases.[7] This issue is separate and distinct from the

---

[7] The issue here is not whether the instruction in the case is a violation of due process as that concept is now understood. That issue was resolved in *Sandstrom v. Montana, supra,* and *State v. O'Connell, supra.* The *Sandstrom* court condemned an instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts." 442 U.S. at 513, 99 S.Ct. at 2453. This Court followed *Sandstrom* in *O'Connell* where we held it to be error to charge the jury "that a man is presumed to intend that which he does, or which is the immediate and necessary consequences of his act." 256 S.E.2d at 430. The United States Supreme Court, in *Sandstrom v. Montana, supra,* did not express any intention to apply that case retroactively. Similarly, this Court did not address the retroactivity issue in *State v. O'Connell, supra.*

question of the retrospective application of *Mullaney v. Wilbur* and *State v. Pendry.*

In *Hankerson v. North Carolina, supra,* and *Jones v. Warden, supra,* it was decided that the rule disallowing the use of an instruction that explicitly shifts the burden of proof to the defendant was to be applied retroactively. The case before us, on the other hand, presents the question of whether the prophylactic rule of *Sandstrom v. Montana* and *State v. O'Connell* disallowing an instruction that merely uses the term "presume" and thereby raises a possibility of jury misinterpretation is to be given full retrospective application.[8] This question has not been addressed by either this Court or the United States Supreme Court.[9] While cases relating to the retroactive

---

[8] *See* n. 2, *supra.* The holdings of *Sandstrom v. Montana* and *State v. O'Connell* have been given limited retroactive effect in this jurisdiction to cases which were at trial or in the appellate process at the time the decisions in those two cases were announced. *See State v. Sacco,* ___ W. Va. ___, 267 S.E.2d 193 (1980); *State v. Goff,* ___ W. Va. ___, 272 S.E.2d 457 (1980); *State v. Young,* ___ W. Va. ___, 273 S.E.2d 592 (1980).

[9] The question of whether *Sandstrom v. Montana, supra,* should be given full retroactive effect has been considered by several federal circuit and district courts. In *United States v. Chiantese,* 560 F.2d 1244 (5th Cir. 1977), *cert. denied,* 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 345 (1979), the Fifth Circuit adopted a rule requiring automatic reversal in cases where a burden-shifting instruction is given to the jury but held the application of this new rule to be strictly prospective. In *United States v. Spiegel,* 604 F.2d 961 (5th Cir. 1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980), the Fifth Circuit, noting the distinction between presumption instructions and inference instructions, stated that they saw "nothing in *Sandstrom* that requires us to abrogate" the holding of prospective application in *Chiantese, supra.* The Fifth Circuit has avoided a direct ruling on the *Sandstrom* retroactivity question. *See Tyler v. Phelps,* 643 F.2d 1095 (5th Cir. 1981); *Holloway v. McElroy,* 632 F.2d 605 (5th Cir. 1980), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 348 (1981). An examination of the cases, however, shows that the Fifth Circuit has expressed an inclination to consider *Sandstrom* to be a case not requiring retroactivity. In *Mays v. Balkcom,* 631 F.2d 48 (5th Cir. 1980), the court remanded a case to the district court to consider whether *Sandstrom* applied to the case. Chief Judge Coleman, however, noted that his concurrence in the

application of *Mullaney v. Wilbur* and *State v. Pendry* are instructive on this issue, they are not controlling. We must now turn to an analysis of whether, under United States Supreme Court precedent, *Sandstrom v. Montana* should be given full retrospective application or was intended to be so applied.

---

decision "is not to be taken as indicating belief that, if applicable, *Sandstrom* should be given retrospective effect in this, or any other, collateral attack." 631 F.2d at 53. In footnote 15 of *United States v. Spiegel, supra,* the court said: "[E]ven if *Sandstrom* did require the *Chiantese* prophylactic rule, we would refuse to apply it retroactively...." 604 F.2d at 969.

The Seventh Circuit, in *Jacks v. Duckworth,* 651 F.2d 480 (7th Cir. 1981), *cert. denied,* 102 S.Ct. 1010, 71 L.Ed.2d 300 (1982), agreed with the Fifth Circuit in saying that the rule should be applied prospectively and read *United States v. Spiegel, supra,* to hold that *Sandstrom* would not be given retroactive effect in the Fifth Circuit. 651 F.2d at 485-486. The Eighth Circuit, without making a detailed analysis of the issue, has applied *Sandstrom* retroactively in a case involving a collateral attack. *Dietz v. Solem,* 640 F.2d 126 (8th Cir. 1981). That court, however, avoided the impact of such a holding by applying the harmless error rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and the cause and prejudice rule of *Wainright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See Dietz v. Solem, supra; Nelson v. Solem,* 640 F.2d 133 (8th Cir. 1981); *Bonnett v. Solem,* 640 F.2d 125 (8th Cir. 1981).

Several United States District Court cases have addressed the question of the retroactivity of *Sandstrom* without extensive consideration or resolution of the complex analytical problems presented by this difficult issue. *See McCorquodale v. Balkcom,* 525 F.Supp. 408 (N.D.Ga. 1981); *Guthrie v. Warden,* 518 F.Supp. 546 (D.Md. 1981); *Washington v. Harris,* 502 F.Supp. 1267 (S.D.N.Y. 1980); *Holloway v. McElroy,* 474 F.Supp. 1363 (M.D.Ga. 1979), *aff'd,* 632 F.2d 605 (5th Cir. 1980), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019 (1981). The confusion surrounding this issue has even given rise to a conflict within one federal district. Compare *Pigee v. Israel,* 503 F.Supp. 1170 (E.D.Wis. 1980), which held that *Sandstrom* was not to be applied retroactively, with *Drinkwater v. Gagnon,* 521 F.Supp. 1309 (E.D.Wis. 1981), which holds the opposite. The opinions were written by different judges.

Our research has not revealed any state cases that consider whether *Sandstrom* should be applied retroactively in habeas corpus cases. The New York Court of Appeals has, however, indicated that "the *Sandstrom* holding will be applied to all cases still in the appellate process." *People v. Getch,* 50 N.Y.2d 456, 459, 407 N.E.2d 425, 428, 429 N.Y.S.2d 579, 582 (1980).

### 3. United States Supreme Court precedent

In 1956 the United States Supreme Court began major revisions in constitutional criminal procedure with the holding that indigent defendants must be given a copy of their trial transcripts on appeal. *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Between 1956 and 1965 other significant cases followed. Many of the cases were applied retroactively although the issue of retrospective application was rarely discussed.[10] In 1965, the United States Supreme Court started to recognize the possible consequences of extending full retroactive effect to every newly announced rule of constitutional criminal procedure.[11]

The retroactivity, or more accurately, the prospective application, doctrine was first given expression in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). In that case the court announced a three-pronged test by which it would decide whether a criminal decision based on the constitution would be given retroactive application: "[W]e must look to the purpose of the [new] rule; the reliance placed upon the [old] doctrine; and the effect on the administration of justice of a retrospective application of [the new rule]." 381 U.S. at 636, 85 S.Ct. at 1741.

In the years since *Linkletter v. Walker*, the United States Supreme Court has frequently addressed the retroactivity issue. Generally, in all those cases the test has been essentially the same as that announced in

---

[10] *See, e.g., Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). *Cf. Griffin v. Illinois, supra*, 351 U.S. at 20-26, 76 S.Ct. at 591-594 (Frankfurter, J., concurring).

[11] *See Mackey v. United States*, 401 U.S. 667, 676, 91 S.Ct. 1160, 1172, 28 L.Ed.2d 404, 411 (1971) (Harlan, J., concurring): "[Non-retroactivity] was the product of the Court's disquietude with the impacts of its fast moving pace of constitutional innovation in the criminal field."

*Linkletter v. Walker.*[12] The application of the test, however, has varied widely. Indeed, it was said, in *Mackey v. United States, supra,* 401 U.S. at 676, 91 S.Ct. at 1172, that the "subsequent course of *Linkletter* became almost as difficult to follow as the tracks made by a beast of prey in search of its intended victim." Although the tracks may be difficult to follow, they are discernible by careful observation.

The Supreme Court, in holding that *Mullaney v. Wilbur, supra,* was to be accorded full retroactive effect, said, citing, *Ivan V. v. City of New York,* 407 U.S. 203, 204, 92 S.Ct. 1951, 1952, 32 L.Ed.2d 659, 661 (1972), "[w]here the *major* purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that *substantially* impairs its truth-finding function and so raises *serious* questions about the accuracy of guilty verdicts in past trials, the new rule [is] given complete retroactive effect." *Hankerson v. North Carolina,* 432 U.S. at 243, 97 S.Ct. at 2345 (emphasis in the original).

That rule was first announced in *Williams v. United States,* 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388, 395 (1971). After stating the "major purpose rule," the Court, in *Williams v. United States,* went on to observe: "Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these

---

[12] *See, e.g., Tehan v. Shott,* 382 U.S. 406, 410, 86 S.Ct. 459, 462, 15 L.Ed.2d 453, 456 (1966); *Johnson v. New Jersey,* 384 U.S. 719, 727, 86 S.Ct. 1772, ____, 16 L.Ed.2d 882, 888 (1966); *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199, 1203 (1967); *DeStefano v. Woods,* 392 U.S. 631, 633, 88 S.Ct. 2093, 2095, 20 L.Ed.2d 1308, 1311 (1968); *Desist v. United States,* 394 U.S. 244, 249, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248, 255 (1969); *Williams v. United States,* 401 U.S. 646, 652, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388, (1971); *Adams v. Illinois,* 405 U.S. 278, 280, 92 S.Ct. 916, 918, 31 L.Ed.2d 202, 206 (1972). The most frequently quoted formulation of the test is found in *Stovall v. Denno, supra:* "The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

circumstances." *Cf. Tehan v. Shott,* 382 U.S. 406, 419, 86 S.Ct. 459, 467, 15 L.Ed.2d 453, 461-462 (1966); *Mackey v. United States, supra,* 401 U.S. at 714, 91 S.Ct. at 1171.

The purpose served by a new constitutional rule is, undoubtedly, a major factor in applying the Supreme Court's three prong retroactivity test. *See Desist v. United States,* 394 U.S. 244, 249, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248, 255 (1969). However, before we apply this first prong of the Supreme Court's retroactivity test to the case before us, we need to examine it in more detail.

There are three aspects to the *Williams v. United States* major purpose test: (1) the major purpose of the new rule must be to (2) correct a flaw that substantially impairs the truth-finding function of trial and (3) thereby raises serious questions about the reliability of past verdicts. All three aspects of the *Williams* test must be satisfied before the need to apply the second two prongs of the *Linkletter v. Walker* test is obviated—those second two prongs being reliance and the impact on the administration of justice. A new rule that merely collaterally enhances the integrity of the truth-finding process will not be applied retroactively for that reason alone.

> [T]he fact that a new rule tends incidentally to improve or enhance reliability does not in itself mandate the rule's retroactive application. ... Thus, retroactivity is not required by a determination that the old standard was not the most effective vehicle for ascertaining the truth, or that the truth-determining process has been aided somewhat by the new standard, or that one of several purposes in formulating the new standard was to prevent distortion in the process.

*Gosa v. Mayden,* 413 U.S. 665, 680, 93 S.Ct. 2926, 2936, 37 L.Ed.2d 873, 887-888 (1973). Also, some incorrect results that may have occurred due to the old rule is not enough to justify, by itself, retroactive application of the new rule. "Where we have been unable to conclude that the use of such a 'condemned practice' in past criminal trials presents substantial likelihood that the results of a number of those trials were factually incorrect, we have

not accorded retroactive effect to the decision condemning that practice." *Williams v. United States, supra,* 401 U.S. at 655, 91 S.Ct. at 1154. *See also Mackey v. United States, supra,* 401 U.S. at 674, 91 S.Ct. at 1164.

The question of whether a displaced rule has substantially impaired the truth-finding process requires the application of a balancing test.[13] "[T]he question of the impact of particular decisions on the reliability and fairness of any aspect of a criminal proceeding is inherently a matter of balancing 'probabilities.' " *Michigan v. Payne,* 412 U.S. 47, 55, 93 S.Ct. 1966, 1970, 36 L.Ed.2d 736, 744 (1973). This balancing approach to the question of whether a displaced rule substantially impairs the truthfinding process was first announced in *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966)."[W]e emphasize that the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree." 384 U.S. at 728-729, 86 S.Ct. at 1778. In that case the Supreme Court declined to apply the new rules of *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), retroactively even though they did acknowledge that "confessions are likely to be highly persuasive with a jury, and if coerced they may well be untrustworthy by their very nature" and that the primary purpose of the new rules was "to guarantee full effectuation of the privilege against self-incrimination, the mainstay of our adversary system of criminal justice." 384 U.S. at 729, 86 S.Ct. at 1778-1779. The Court found, however, that the rules of *Escobedo* and *Miranda* "encompass situations in which the danger is not necessarily as great as when the accused is subjected to overt and obvious coercion" and declined to apply the new rules retroactively. 384 U.S. at 730, 86 S.Ct. at 1779. To have applied the holdings of those

---

[13] *Cf. Ivan V. v. City of New York, supra; McConnell v. Rhay,* 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed.2d 2 (1968); *Arsenault v. Massachusetts,* 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968); *Berger v. California,* 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969).

cases retroactively "would have required the reversal of many convictions in which no serious constitutional violation had occurred." *Michigan v. Payne, supra*, 412 U.S. at 53, 93 S.Ct. at 1970.

The Supreme Court again used this balancing approach in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), which refused to apply *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), retroactively. The Supreme Court conceded that, "A conviction which rests on a mistaken identification is a gross miscarriage of justice," and that, "the *Wade* and *Gilbert* rules . . . are . . . aimed at avoiding unfairness at the trial by enhancing the reliability of the fact-finding process in the area of identification evidence. . . ." 388 U.S. at 297, 298, 87 S.Ct. at 1970. The Supreme Court also found, however, that retroactive application of the rules announced in *Wade* and *Gilbert* "will undoubtedly affect cases in which no unfairness will be present." The Supreme Court went on to hold that "the certainty and frequency with which we can say in the confrontation cases that no injustice occurred differs greatly enough from the cases involving absence of counsel at trial or on appeal to justify treating the situations as different in kind for the purpose of retroactive application, especially in light of the strong countervailing interests." 388 U.S. at 299, 87 S.Ct. at 1971.

In *DeStefano v. Woods*, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968), the Supreme Court used the balancing approach to justify the refusal to apply *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), retroactively. Both *Duncan v. Louisiana* and *Bloom v. Illinois* concerned the right to trial by jury in criminal cases, which right "generally tends to prevent arbitrariness and repression." 392 U.S. at 633, 88 S.Ct. at 2095. The right to trial by jury is the very heart of the truth-finding function of our criminal justice system.

Indeed, trial by jury is the truth-finding process. "Yet in *DeStefano v. Woods* (citation omitted), the Court by a *per curiam* opinion, denied retroactive application to those new constitutional holdings. The Court thus concluded that it did not follow that every judgment rendered in a *Duncan* or in a *Bloom* situation, prior to the decisions in those cases, was so infected by unfairness as to be null and void." *Gosa v. Mayden, supra,* 413 U.S. at 676, 93 S.Ct. at 2934. The Supreme Court, in *DeStefano v. Woods,* held: "The values implemented by the right to jury trial would not measurably be served by requiring retrial of all persons convicted in the past by procedures not consistent with the Sixth Amendment right to jury trial." 392 U.S. at 634, 88 S.Ct. at 2095.[14] *Cf. Brown v. Louisiana,* 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980); *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Hence, even if a new rule does seek to correct an aspect of trial that calls into question the integrity of the truth-finding process, the purpose of the rule may be "adequately served by prospective application" where there are countervailing considerations.[15] *Mackey v. United States, supra,* 401 U.S. at 675, 91 S.Ct. at 1165.

Although the Supreme Court's cases seem to set forth "incompatible rules and inconsistent principles," *Desist v. United States, supra,* 394 U.S. at 258, 89 S.Ct. at 1038, we believe that a coherent analysis is possible under those cases.

---

[14] *See also Gosa v. Mayden, supra,* 413 U.S. at 688-689, 93 S.Ct. at 2940: "[T]he question [is] whether the court whose judgment is being reviewed should be required in the interests of substantial justice to retry the accused under the new constitutional rule announced by the Court after the first trial had been completed but before the new constitutional decision was announced."

[15] In *Michigan v. Payne, supra,* the Supreme Court said: "Absent countervailing considerations rooted in the purposes underlying a new rule, this factor—that retroactive application of such broadly protective rules would occasion reversals in many instances in which no actual prejudice has been suffered—points toward a ruling of prospectivity." 412 U.S. at 54, 93 S.Ct. at 1970.

4. Application of United States Supreme Court
precedent to *Sandstrom v. Montana*

a. The Major Purpose

Unlike *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), which was the subject of *Ivan V. v. City Of New York, supra, Sandstrom v. Montana, supra,* did not announce a new constitutional doctrine. Rather, it announced a prophylactic rule designed to further effectuate the *Winship* doctrine. In this regard *Sandstrom v. Montana* is similar to *Michigan v. Payne, supra,* and *Johnson v. New Jersey, supra,* in that, like those cases, *Sandstrom v. Montana* did not confer "a constitutional right that had not existed prior to [the] decision" but rather "created a protective umbrella serving to enhance a constitutional guarantee." 412 U.S. at 54, 93 S.Ct. at 1970.

The Supreme Court, in *In re Winship,* held: "Due process commands that no man shall lose his liberty unless the Government has borne the burden of ... convincing the fact-finder of his guilt." 397 U.S. at 364, 90 S.Ct. at 1072. The purpose of that doctrine was to overcome an aspect of trial that did substantially impair the truth-finding function of trial and cast serious doubt upon the validity of prior convictions—the allowance of a finding of guilt on a less than beyond a reasonable doubt standard. *See Ivan V. v. City of New York, supra.* The same was true of the rule announced in *Mullaney v. Wilbur, supra,* where the burden of proof was explicitly shifted to the defendant by a jury instruction. Yet, it is recognized that " 'there is always in litigation a margin of error, representing error in factfinding.' *Speiser v. Randall,* 357 U.S. 513, 525, 78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460 (1958). The constitutional requirement that guilt in criminal cases be proved beyond a reasonable doubt serves to limit, but cannot eliminate, the number of criminal defendants found guilty who are in fact innocent. *See In re Winship,* 397 U.S. 358, 370-372, 90 S.Ct. 1075-76, 25 L.Ed.2d 368 (1970) ...." *Williams v. United States, supra,* 401 U.S. at 664, 91 S.Ct. at 1158.

The major purpose, then, of *In re Winship, supra,* was to correct a very substantial impairment of the fact-finding process that did raise serious questions about the validity of the verdict in every case where the new rule had not been followed. To effectuate that correction the case announced a new constitutional doctrine under the due process clause requiring the State to prove every material element of a crime charged beyond a reasonable doubt. In *Mullaney v. Wilbur, supra,* the jury was instructed that the State could prove a material element of a crime by a presumption unless the defendant offered proof in negation of the presumption. The effect of that instruction was the same as the practice condemned in *In re Winship. See Hankerson v. North Carolina, supra.* The shifting of the burden of proof by an explicit instruction clearly infected the fact-finding process and raised a substantial likelihood that prior verdicts may have been invalid in most, if not all, of the cases in which such an instruction had been given.

The *Sandstrom v. Montana* situation is, however, different. In that case the jury was not told that the State had a lesser burden of proof than that constitutionally required. Nor was it told that the defendant had any burden on any material element of the crime. In that case the jury was merely instructed that the law presumes a man to intend that which he does.[16] The Supreme Court did not find that this instruction impermissibly lessened the State's burden of proof or that it impermissibly shifted the burden to the defendant. The instruction was condemned on the basis that the "jury *may* have interpreted the ... instruction as constituting either a burden-shifting presumption ... or a conclusive presumption...." *Sandstrom v. Montana, supra,* 442 U.S. at 524, 99 S.Ct. at 2459. (Emphasis added). The error in the case was not so much the instruction itself but the possibility that

---

[16] The instruction would have been acceptable had the trial court used the word "infer" instead of the word "presume." *See Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *County Court of Ulster County v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).

the jury may have misinterpreted the instruction. The major purpose of the rule announced in *Sandstrom v. Montana* is, therefore, to further effectuate the *Winship* doctrine by reducing the risk of possible jury misinterpretation of instructions that could lead to an *In re Winship*, or a *Mullaney v. Wilbur*, type of error. This prophylactic rule is not designed to overcome an aspect of trial that substantially impairs the truth-finding function. The mere possibility of a jury misinterpreting an instruction cannot be said to be a substantial impairment of the truth-finding process at trial. After all, "[i]mplicit in [the] constitutional requirements of jury trial is a belief that juries can be trusted. . . ." *Jackson v. Denno*, 378 U.S. 368, 405, 84 S.Ct. 1774, 1796, 12 L.Ed.2d 908, 932 (1964). Our system of criminal justice could not operate if the effective presumption was that juries consistently misinterpret the instructions given to them by the court. Applying the rule of *Sandstrom v. Montana* retroactively would also "occasion windfall benefits for some defendants" *Michigan v. Payne, supra,* 412 U.S. at 53, 93 S.Ct. at 1970, and would "undoubtedly affect cases in which no unfairness" occurred. *Stovall v. Denno, supra.*

The purpose to be served by the prophylactic rule announced in *Sandstrom v. Montana*, therefore, would not be significantly furthered by full retrospective application. This is especially true in light of the countervailing considerations of finality of judgments;[17] reliance on the

---

[17] The essence of the whole retroactivity doctrine is whether substantial justice would require a retrial because of serious unreliability in the fact-finding process. A retrial, however, often forces the parties "to relitigate facts buried in the remote past through presentation of witnesses whose memories of the relevant events often have dimmed. This very act of trying stale facts may well, ironically, produce a second trial no more reliable as a matter of getting at the truth than the first." *Mackey v. United States, supra,* 401 U.S. at 691, 91 S.Ct. at 1179.

Courts should not be faulted for following *stare decisis. Desist v. United States, supra,* 394 U.S. at 264, 89 S.Ct. at 1042. *See also Lemon v. Kurtzman,* 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973). Where a trial resulting in a conviction was held in strict compliance with

prior rule allowing the instruction; the burden that retroactivity would have on the administration of justice; and the availability of other grounds of relief under *Mullaney v. Wilbur, supra* and *In re Winship, supra,* when the instruction goes beyond the mere possibility of jury misinterpretation and impinges upon the proper distribution, or level, of burden of proof. *See Johnson v. New Jersey, supra; Michigan v. Payne, supra.*

---

then applicable constitutional norms, it should not be overturned unless there is a substantial likelihood that the result was erroneous. *See Mackey v. United States, supra,* 401 U.S. at 674, 91 S.Ct. at 1164.

No one has ever been able to point to a word in our constitutional history that shows the Framers ever intended that the Due Process Clause of the Fifth or Fourteenth Amendment was designed to mean any more than that defendants charged with crimes should be entitled to a trial governed by the laws, constitutional and statutory, that are in existence at the time of the commission of the crime and the time of the trial.

*Stovall v. Denno, supra,* 388 U.S. at 305, 87 S.Ct. at 1974 (Black, J., dissenting).

In the case presently before us the defendant was tried according to the then applicable constitutional norms. *See State v. Bowman, supra.* The appellant here, as in *Williams v. United States, supra,* makes "no claim ... that the evidence against [him] was constitutionally insufficient to prove" his guilt. 401 U.S. at 658, 91 S.Ct. at 1155.

We must necessarily also consider the impact of a retroactivity holding on the interests of society when the new constitutional standard promulgated does not bring into question the accuracy of prior adjudications of guilt. Wholesale invalidation of convictions rendered years ago could well mean that convicted persons would be freed without retrial, for witnesses ... no longer may be readily available, memories may have faded, records may be incomplete or missing, and physical evidence may have disappeared. Society must not be made to tolerate a result of that kind when there is no significant question concerning the accuracy of the process by which judgment was rendered or, in other words, when essential justice is not involved.

*Gosa v. Mayden, supra,* 413 U.S. at 685, 93 S.Ct. at 2938-2939. There is no significant question of the accuracy of the process in the case presently before us or in other *Sandstrom v. Montana* type of cases—just the mere possibility of jury misinterpretation of the instruction. There is no question but that Bowman received a fundamentally fair trial and "essential justice" is not here involved.

## b. Reliance

The reliance placed on the pre-*Sandstrom* practice of allowing the disapproved instruction also militates against the retroactive application of the rule announced in that case. The case presently before us, for example, was tried in 1969, a full decade before the decision in *Sandstrom v. Montana*. The *Sandstrom v. Montana* rule was not foreshadowed prior to *Mullaney v. Wilbur, supra.* Indeed, it cannot be said that even *Mullaney v. Wilbur* clearly forewarned of the result in *Sandstrom v. Montana* as that holding was not mandated by *Mullaney v. Wilbur.* Rather, the holding in *Sandstrom v. Montana* was a new protective rule issued to prevent an unknowing encroachment upon the rights announced in *Mullaney v. Wilbur* and *In re Winship.* Who could have foreseen that the United States Supreme Court would find that the possibility of jury misinterpretation of the word "presume" would be equated to specifically shifting or lessening the burden of proof? The courts cannot be faulted for not anticipating *Sandstrom v. Montana.* "There was no clear foreshadowing of that rule." *Adams v. Illinois*, 405 U.S. 278, 283, 92 S.Ct. 916, 919, 31 L.Ed.2d 202, 208 (1972).

## c. Burden on the administration of justice

The burden that retroactive application of the rule would place on the administration of justice also supports limiting the retroactive application of *Sandstrom v. Montana* to cases at trial or on appeal when it was decided. *See* n. 8, *supra.* In *Tehan v. Shott, supra,* only six states had followed the condemned practice but yet retroactivity was denied. It is even more true here than in *Tehan v. Shott* that the retroactive application of this new rule "would have an impact upon the administration of their criminal law so devastating as to need no elaboration. ... At the very least, the processing of current criminal calendars would be disrupted while hearings were conducted to determine ... harmless error." *Stovall v. Denno, supra,* 388 U.S. at 300, 87 S.Ct. at 1971. *See also Adams v. Illinois, supra.*

### d. Conclusion

The major purpose of the rule announced in *Sandstrom v. Montana, supra,* was not to correct a substantial inadequacy in the fact-finding process which had lead to questionable verdicts. *Williams v. United States, supra.* Further, the retroactive application of the *Sandstrom v. Montana* rule would result in reversals, or at least require significant court review, in many instances where there was no actual prejudice and that result is not justified by any "countervailing considerations rooted in the purposes underlying" the rule announced in *Sandstrom v. Montana. Michigan v. Payne, supra.* Finally, the probability that the giving of a *Sandstrom v. Montana* type of instruction infected the fact-finding process at trial is not substantial enough to outweigh the countervailing considerations such as reliance on the old practice and the impact on the administration of justice. *See Adams v. Illinois, supra; Stovall v. Denno, supra; Tehan v. Shott, supra; Johnson v. New Jersey, supra. Sandstrom v. Montana,* therefore, should not be given full retroactive effect.

### 5. Retroactivity of *State v. O'Connell*

The same considerations and observations about the purpose served by the rule announced by the United States Supreme Court in *Sandstrom v. Montana, supra, which were discussed above, apply with equal force to the purpose of the rule that this Court adopted in State v. O'Connell.* The rule's main purpose is not to correct a substantial impairment of the truth finding function at trial.

The instruction that we condemned in *State v. O'Connell, supra,* was a very common instruction in this jurisdiction prior to 1979. "The instruction complained of or its equivalent has been given and approved in numerous decisions of this Court since its incorporation in the initial clause of *Pendry*-type instructions many years ago. *See,* Syl. pt. 11, *State v. Cain,* 20 W. Va. 679 (1882); *State v. Kellison,* 56 W. Va. 690, 47 S.E. 166 (1904); *State v. Reppert,*

132 W. Va. 675, 694-95, 52 S.E.2d 820, 832 (1949) and the decisions cited therein." *State v. O'Connell, supra,* 256 S.E.2d at 430. The instruction condemned in that case was susceptible of use, and was used, not just in murder trials but in any trial in which an element of the crime charged was intent. An instruction very similar to the one condemned in *State v. O'Connell, supra,* was approved by this Court as recently as 1974 in *State v. Putnam,* 157 W. Va. 899, 205 S.E.2d 815 (1974).

In *State ex rel. Johnson v. Hamilton,* ____ W. Va. ____, 266 S.E.2d 125 (1980); we said, at 128:

> In determining whether to apply a change in the decisional law retroactively, the fundamental principle to which we have looked is reliance. *Pnakovich v. State Workmen's Compensation Comm'r,* W. Va., 259 S.E.2d 127 (1979); *Bradley v. Appalachian Power Co.,* W. Va., 256 S.E.2d 879 (1979). Since a person or the State should be able to plan the course of civil or criminal litigation with reasonable reliance on current procedural rules, the reliance of the prosecution is an important element in considering whether to apply today's rule retroactively. Therefore since there is no substantial impairment of the truth finding function (citation omitted) we conclude that this is not a change in decisional law requiring retroactive application.

The giving of the instruction condemned in *State v. O'Connell, supra,* has only a minimal impact on the truth finding function of trial and the reliance on the prior practice of allowing the giving of the instruction has been tremendous. We, therefore, hold that the decision in *State v. O'Connell, supra,* does not require full retroactive application. The decisions in *Sandstrom v. Montana* and *State v. O'Connell* were not intended to be accorded full retroactivity and the change wrought by those cases does not affect the validity of the appellant's conviction or sentence. This contention does not provide a basis for

relief under *W. Va. Code*, 53-4A-1(d) [1967], and was, therefore, properly dismissed by the trial judge.

*Affirmed.*