305 S.E.2d 313

**STATE of West Virginia**

v.

**Joseph Alan THAYER.**

**No. 15602.**

Supreme Court of Appeals of West Virginia.

July 8, 1983.

Michael E. Froble, Asst. Atty. Gen., Charleston, for appellee.

James M. Cagle, Charleston, for appellant.

PER CURIAM:

The appellant, Joseph Alan Thayer, appeals from a conviction of voluntary manslaughter rendered against him by a jury in the Circuit Court of Kanawha County. The appellant was also convicted of using a gun in the commission of a crime. He was sentenced to an indeterminate term of from one to five years in the penitentiary with the provision that he would not be eligible for parole for at least three years. Although appellant cites several assignments of error, we will address only one and reverse solely on that point.

The appellant was charged with first degree murder in the shooting of one David Duane Young outside a club known as the King's Inn located on Charleston's west side. The shooting occurred sometime shortly after 3:00 a.m. on March 15, 1980. The events leading up to the shooting are not in dispute. The appellant met his friend, William Saul, at the King's Inn for a drink at approximately 1:00 a.m. They stayed there between thirty minutes to an hour at which time they left and went to a downtown nightclub known as the Corner Lounge. When the club closed at 3:00 a.m. the two left in the appellant's car to return to the King's Inn and retrieve Mr. Saul's vehicle which he had left parked there. As the appellant and Saul were leaving the Corner Lounge, they saw a friend of the appellant's, Ann Berger, who asked the appellant to give her and her companion, William Whisnand, Jr., a ride home to Spring Hill Mountain. The appellant agreed and the four headed back to the King's Inn. The appellant was driving his car; Mr. Saul was in the front passenger seat and Ms. Berger and Mr. Whisnand were in the back seat.

When he reached Second Avenue upon which the King's Inn is located, the appellant drove past the club and also past the street where Mr. Saul's vehicle was parked. Then realizing he had missed the turnoff to pick up Mr. Saul's truck, he made a u-turn on Second Avenue and came back toward the King's Inn. At this point the facts become disputed. Carl Lycans, a witness for the State and a friend of the victim, testified that he was leaving the King's Inn with the victim and one Joetta Moss when he observed the appellant's car traveling at a speed greater than the speed limit. The victim yelled at the appellant to slow the car down. (Slow that damn car down buddy). After the appellant made the u-turn and came back toward the club, the witness noticed the victim and the appellant having "sort of a loud verbal conversation." As he continued down the street he heard two shots which caused him to turn around.

He saw the victim "laying across" the laps of the two people in the front seat of the car. He did not see any physical altercation between the victim and the appellant.

William Saul, the appellant's passenger, testified that after they made the u-turn and they were coming back toward the club to pick up his truck, someone crossed in front of their car and proceeded to the driver's side of the car. That person (later identified as the victim) entered the car although Mr. Saul testified that he did not remember how entry was gained. Mr. Saul further testified that the victim "wrapped his arms around Joe Thayer's neck, that put Joe Thayer, bent his face over the steering wheel of the car, kind of crouched him all over." Saul attempted to hit the victim and tried to shove him out of the car. When he heard the gun shots he backed away. Finally, Mr. Saul testified that the victim, who was also the bouncer at the King's Inn, was the agressor in the altercation and that he did not hear the appellant say anything at any time to the victim.

Douglas Feldhaus testified that he was standing in front of the King's Inn at the time of the shooting. He heard the victim tell the appellant to slow his car down (slow the mother-fucking car down) and saw him reach for the door handle of the appellant's car and enter the car. Feldhaus further testified that after the victim entered the car, it appeared that the appellant was ducking his head down as if to reach for something. Feldhaus witnessed the struggle and also heard the two ensuing shots.

Neither William Whisnand, Jr. nor Francis Berger added anything of substance during their testimony at trial. Each testified that they were too intoxicated to remember events that transpired.

The appellant testified in his own behalf. He stated that after he left the Corner Lounge he did not know the location of Mr. Saul's truck which was parked somewhere around the King's Inn so when he took Saul to pick the truck up he missed the street where it was parked and had to make a u-turn. He was driving about 35 miles per hour at the time. The appellant testified that after he turned the car around, the victim walked into the pathway of his car, walked to the driver's side, yanked the car door open and cursed him by saying to "slow this goddamn car down." The appellant responded: "What are you? Some kind of a traffic cop?" The appellant testified that it was at this point that the victim jumped in the car on top of him and grabbed him around the neck and the appellant grabbed a gun from under the front seat. When questioned as to why he grabbed the gun, the appellant testified that he was scared:

"I was scared. He just about pulled me out of the car. He was twisting my back. I was just scared. I thought he was trying to get the gun away from me and shoot me with it. I didn't know what he was going to do. I was just scared."

The appellant further testified that he fired one warning shot through the roof of the car and that when he fired the second shot, his head was twisted around, so he couldn't see the victim and did not know until later that the victim had been shot.

The record indicates that the appellant stood five feet, eleven inches tall and weighed 145 pounds at the time of the shooting. The victim, David Young, weighed 240 pounds and was six feet, two inches tall.

The sole issue which we address in this opinion is whether the trial court erred when it instructed the jury on the issue of self-defense. The record indicates that the court did err by refusing to give defense instructions that were consistent with the law of self-defense as enunciated by this Court in *State v. Kirtley*, 162 W.Va. 249, 252 S.E.2d 374 (1978).

*Kirtley* involved the stabbing death of a man who had threatened physical harm to the accused. In that case we adopted the majority rule in America that the defendant need not prove self-defense by a preponderance of the evidence in order to place the burden of proof on the prosecution, but rather the defendant must pro-

duce evidence sufficient to create only a reasonable doubt on the issue. Syllabus point 4 of *Kirtley* states:

"Once there is sufficient evidence to create a reasonable doubt that the killing resulted from the defendant acting in self-defense, the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense."

We agree with the appellant's contention that State's Instructions Nos. 13 and 17 which were given in this case are improper under *Kirtley.* Those instructions are as follows:

*Instruction No. 13—*

"The Court instructs the jury that if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant, JOSEPH A. THAYER, shot and killed David Duane Young and that he, the said JOSEPH A. THAYER, relies upon self-defense to excuse him for such act, the burden of showing such excuse is on the defendant, and to avail him such defense he must prove to the satisfaction of the jury by a preponderance of the evidence...."

*Instruction No. 17—*

"The Court instructs the jury that there is no law to justify the proposition that a man may be the assailant, the aggressor, and bring on a fight and then claim exemption from the consequences thereof on the ground of self-defense; ... before he can avail himself of self-defense it must appear that he withdrew from the assault in good faith and clearly announced a desire for peace. And you are instructed that in order to carry the burden of showing that he did retreat and announce a desire for peace after the trouble began, he must prove such defense by a preponderance of the evidence."

State's Instruction No. 17 incorrectly placed the burden of proof on the defendant under the preponderance of evidence standard and neglected to mention the State's burden. Instruction No. 13 also improperly placed the burden of proving self-defense on the appellant under the improper standard.

At trial the court refused to give the following instructions offered by the defense:

"The Court instructs the jury that once there is sufficient evidence to create a reasonable doubt that the killing in this case resulted from the defendant acting in self-defense, then the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense."

"The Court instructs the jury that where a defendant is the victim of an unprovoked assault and in a sudden heat of passion uses a deadly weapon and thereby kills the aggressor, he cannot be found guilty of murder where there is no proof of malice except the use of a deadly weapon. Therefore, if you believe from all of the evidence in the case that the defendant Joseph Alan Thayer was the victim of an unprovoked assault and in a sudden heat of passion killed David Duane Young with a deadly weapon, then you cannot find the defendant Joseph Alan Thayer guilty of the crime of murder unless you believe from all of the evidence in the case that there is evidence of malice in addition to the use of a deadly weapon."

Both of these instructions correctly stated the law of self-defense and in view of the evidence in this case, it was error for the court to refuse them.

The State admits that its Instruction No. 13 improperly stated the law but contends that the giving of the instruction was harmless error. We do not agree. Although the court did give one correct instruction offered by the defense on the issue of self-defense * this instruction, when considered by the jury along with the

---

* Defendant's Instruction No. 20 read:
"You are instructed that when the defendant relies upon self-defense to excuse the homicide he must produce some evidence in support of self-defense. If you believe from all of the evidence that he has met this burden of producing some evidence of self-defense so that you entertain a reasonable doubt as to his guilt, then you can not find the defendant guilty."

incorrect State instructions, only could have created confusion in the minds of the jurors.

Accordingly, the judgment of the Circuit Court of Kanawha County is reversed and a new trial awarded.

Reversed; new trial awarded.