# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 18-0442** (Preston County 17-F-17)

**Kevin Monroe Miller, II,**
**Defendant Below, Petitioner**

**FILED**

**November 4, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Kevin Monroe Miller, II, by counsel Lisa Hyre, appeals the Circuit Court of Preston County's March 30, 2018, order denying his motions for judgment of acquittal and for a new trial. Respondent the State of West Virginia, by counsel Benjamin F. Yancey, III, submitted a response to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2016, Petitioner Kevin Miller, II and Sonya Shears were in a relationship and had a son together. However, they had lost custody of the child, H.M. Under the custody order in place at that time, petitioner was allowed supervised visitation with the child and petitioner's parents were also permitted to visit with the child. Under that order, petitioner was not permitted to remove H.M. from his parents' property ("the Miller property") during those visits.[1]

On October 29, 2016, police responded to a call about a shooting incident between petitioner and his father, Mr. Miller, at the Miller property. Police were informed that petitioner and Ms. Shears had left the property so two officers from the Preston County Sheriff's Department went to the area of the Jiffy Mart near the Miller property where they encountered petitioner and Ms. Shears standing on the side of the road a few miles from the Miller property. When officers approached, petitioner informed them that he had a .45 caliber gun in the vehicle and that he had used that gun to shoot his father. During that conversation, petitioner informed Deputy Hovatter that he had been at the Miller property and that H.M. was present at the time. Petitioner further stated that he and his father got into an argument over H.M. and petitioner's mother, Mrs. Miller,

---

[1] In March of 2018, both parents' parental rights to H.M. had been terminated and H.M. was residing with a foster family.

1

asked petitioner to leave.[2] Petitioner refused to leave and stated that he wanted to take H.M. from the home. According to petitioner, he then walked out of the house and Mr. Miller followed, firing two shots at petitioner's feet. Petitioner and Ms. Shears walked to their vehicle, but Mr. Miller followed, pointing his gun at them. Petitioner then retrieved his gun from the vehicle and peeked around the outbuilding near the vehicle where he observed Mr. Miller standing approximately thirty to forty yards away. Mr. Miller's gun appeared to jam so he began to walk away. However, as he did so, petitioner shot Mr. Miller. Mr. Miller responded by firing shots toward petitioner so petitioner and Ms. Shears left the scene.

Another officer, Deputy Cline, spoke with Mrs. Miller before going to the location where petitioner and Ms. Shears were found. Petitioner agreed to speak with Deputy Cline, relaying a similar story to the one he told Deputy Hovatter. Deputy Cline arrested petitioner on the side of the road, and petitioner was subsequently transported to the sheriff's department. While there, petitioner spoke with one of the deputies who had originally gone to the Jiffy Mart area, Deputy Stockett, and that interview was recorded.

On March 7, 2017, the grand jury returned a four-count indictment against petitioner, charging him with attempted first-degree murder, malicious assault, and two counts of wanton endangerment with a firearm. Petitioner was tried before a jury between February 6 and 8, 2018. At the close of the State's case, petitioner moved for a judgment of acquittal, but the circuit court denied that motion. At the end of petitioner's case-in-chief, he again moved for a judgment of acquittal, but that motion was also denied. At the conclusion of the trial, the jury convicted him of two counts of wanton endangerment with a firearm but acquitted him of the other charges. Petitioner filed a renewed motion for judgment of acquittal and motion for new trial in February of 2018. The circuit court heard oral argument on that motion, but it was denied by the circuit court by order entered March 30, 2018.

The circuit court entered its sentencing order on April 30, 2018, sentencing petitioner to two determinate periods of five years of imprisonment, said sentences to run concurrently. He was given credit for time served at Tygart Valley Regional Jail and while on home confinement. Petitioner appeals from those orders. Because we review such orders under different standards, we will address the appropriate standards in conjunction with the assignments of error.

On appeal, petitioner sets forth four assignments of error: (1) the circuit court erred by denying petitioner's motion for judgment of acquittal where the State failed to prove that petitioner was not acting in self-defense when he shot at the man who had shot at him and threatened to kill him; (2) the circuit court violated petitioner's Sixth Amendment right of confrontation when it allowed irrelevant and highly prejudicial Rule 404(b) evidence to be admitted during the trial, in the form of hearsay, and under the guise of res gestae; (3) the circuit court erred when it did not

---

[2] Petitioner now denies that any such argument took place prior to the shooting. Without citing to the record, he contends that both he and Ms. Shears testified that there was no argument prior to Mr. Miller shooting at petitioner.

2

suppress petitioner's statement taken in violation of *Miranda*[3] and petitioner's Fifth Amendment right to counsel; and (4) the circuit court erred when it prevented petitioner from calling his expert witness, Dr. William Fremouw, in violation of petitioner's Sixth Amendment constitutional right to call witnesses on his behalf.

We note at the outset that Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." The Rule further permits the Court to "disregard errors that are not adequately supported by specific references to the record on appeal." While petitioner cites to the appendix record in his statement of facts, his citations to the record in the argument section of his brief fall far short of complying with Rule 10(c)(7). Due to the lack of citation to the record and petitioner's ambiguous arguments, this Court is unable to fully address all of his assignments error.

In his first assignment of error, petitioner argues that he was entitled to a jury instruction on self-defense because his father shot first and threatened to kill both petitioner and Ms. Shears.[4] He contends that the State failed to prove that petitioner was not acting in self-defense and/or the defense of others. He asserts that self-defense and the defense of others is a complete defense to any charge and that the circuit court erroneously denied his request to properly instruct the jury regarding those issues. Without citing to the record, according to petitioner, this is particularly true here because petitioner returned gunfire after his father, while shooting at petitioner, threatened to kill him. He also points to the fact that the jury did not find him guilty of attempted first-degree murder, attempted second-degree murder, attempted voluntary manslaughter, malicious assault, or unlawful assault.

This Court has found that "[w]hether facts are sufficient to justify the delivery of a particular instruction is reviewed by this Court under an abuse of discretion standard. Of course, in criminal cases where a conviction results, the evidence and any reasonable inferences are considered in the light most favorable to the prosecution." *State v. Derr,* 192 W. Va. 165, 180, 451 S.E.2d 731, 746 (1994). *See* Syl. Pt. 1, in part, *State v. Hinkle,* 200 W. Va. 280, 489 S.E.2d 257 (1996) (holding that "[a]s a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion"). Further, we have held that the elements of self-defense are as follows:

> [A] defendant who is not the aggressor and has reasonable grounds to believe, and actually does believe, that he is in imminent danger of death or serious bodily harm

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] Petitioner's only citation to the record in his first assignment of error is to point to the State's argument that a self-defense claim does not apply to charges of wanton endangerment. However, he fails to point this Court to his request to "properly instruct the jury regarding self-defense and the defense of others in the instructions of each count." He also references the evidence presented at trial while failing to point to the record for such evidence.

3

from which he could save himself only by using deadly force against his assailant has the right to employ deadly force in order to defend himself.

*State v. Hughes,* 197 W. Va. 518, 524, 476 S.E.2d 189, 195 (1996) (quoting *State v. W.J.B.,* 166 W. Va. 602, 606, 276 S.E.2d 550, 553 (1981)). This Court has also held that "[t]o properly assert the defense of another doctrine, a defendant must introduce 'sufficient' evidence of the defense in order to shift the burden to the State to prove beyond a reasonable doubt that the defendant did not act in defense of another." Syl. Pt, 4, in part, *State v. Cook*, 204 W. Va. 591, 515 S.E.2d 127 (1999). Moreover, as we set forth in *Cook*,

> [a]n intervenor is not obliged to use deadly force in defense of another, unless the third party is in imminent danger of death or serious bodily harm. This "simply means that an intervenor cannot act until the party whom the intervenor is defending is immediately threatened." Moore, *Doing Another's Bidding Under a Theory of Defense of Others,* 86 Ken.L.J. at 284. This criterion is no different from that which this Court uses in the context of self-defense. We have held that a person who reasonably believes he or she "is in imminent danger of death or serious bodily harm . . . has the right to employ deadly force in order to defend himself." *State v. W.J.B.,* 166 W.Va. at 606, 276 S.E.2d at 553 (citing *State v. Kirtley,* 162 W.Va. 249, 252 S.E.2d 374 (1978); *State v. Green,* 157 W.Va. 1031, 206 S.E.2d 923 (1974); *State v. Bowyer,* 143 W.Va. 302, 101 S.E.2d 243 (1957); *State v. Preece,* 116 W.Va. 176, 179 S.E. 524 (1935)). *Accord State v. Hughes,* 197 W.Va. 518, 524, 476 S.E.2d 189, 195 (1996). The imminent danger standard is appropriate for the doctrine of defense of another, as it is consistent with the requirement for using deadly force in self-defense.

204 W. Va. at 601-02, 515 S.E.2d at 137-38. Even in petitioner's recitation of the facts, he admits that he reached his vehicle, which was parked around the corner of a building separate from the Miller home, and retrieved his gun from that vehicle.

Petitioner's actions after retrieving his gun support the jury's finding of guilt as to the wanton endangerment charges and the denial of the requested jury instruction. As the circuit court found, statements from petitioner indicated that he did not know where his mother and child were during the shooting, as they had been outside when the first shots were fired. For these reasons, the circuit court stated that it could not

> say that a jury was not justified in finding that [petitioner] wantonly fired his gun in the direction of his father and the Miller residence, without knowing where the other family members were located, thereby creating a substantial risk of death or serious bodily injury to his father and the others.

Based on the facts of the instant case, we find that the circuit court did not abuse its discretion by denying petitioner's request to instruct the jury as to self-defense and/or defense of another.

Petitioner's second assignment of error is his contention that the circuit court effectively violated his right to confront his accuser by allowing irrelevant and highly prejudicial Rule 404(b)

hearsay evidence to be admitted under the guise of res gestae. Petitioner argues that the combination of inadmissible Rule 404(b) evidence and the State's comments to the jury about Mr. Miller's state of mind violated petitioner's Sixth Amendment right to confront his accuser. Petitioner seems to blame the State and the circuit court for Mr. Miller's failure to appear as a trial witness despite the State subpoenaing him. He does not point to any request to continue the trial or otherwise compel Mr. Miller to appear as a witness. The same is true for Mrs. Miller's failure to appear.

Petitioner is also critical of the circuit court's admission of testimony from a Child Protective Services ("CPS") worker, addressing the custodial issues as to H.M. Petitioner contends that it is untenable that the circuit court permitted the admission of Rule 404(b) evidence in the form of hearsay testimony because the evidence supported the State's otherwise unsupported theory of the case. Further, petitioner contends that the State violated Trial Court Rule 42.04(b), which provides, in relevant part, that "[c]ounsel may not comment upon any evidence ruled out, nor misquote the evidence, nor make statements of fact dehors the record, nor contend before the jury for any theory of the case that has been overruled." Petitioner argues that he was clearly prejudiced by the admission of prejudicial Rule 404(b) evidence and the extensive comments made by the State.

Rule 404(b)(1) of the West Virginia Rules of Evidence prohibits the introduction of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." There are, however, exceptions to that rule, including that the "evidence may be admissible for another purpose, such as proving motive, opportunity, [and] knowledge . . . ." In *State v. LaRock,* 196 W. Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996) (footnote and citations omitted), we held that

> a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

In *State v. Willett,* 223 W. Va. 394, 397, 674 S.E.2d 602, 605 (2009), we further explained that "[i]n reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence . . . maximizing its probative value and minimizing its prejudicial effect."

Because petitioner cites to only volumes K and L of the appendix, which contain the State's closing and rebuttal closing arguments, without citations to any specific pages therein, we address only the portions of petitioner's argument addressed in the State's closing and rebuttal closing arguments. In the closing argument, the State told the jury that "[w]ithout that initial custody issue, without dad saying no, you wouldn't have had the anger from him, you wouldn't have had that intent, you wouldn't have had that malice." Further, the State told the jurors, "I told you not to expect . . . to hear from Kevin Senior and Etta, and you didn't. Why? Were they afraid? Maybe.

5

Were they too torn about having to testify against their own son? Maybe. . . ." When petitioner's trial counsel objected, the circuit court overruled that objection. The State continued by telling jurors that "just because [Mr. and Mrs. Miller] are not here and you didn't hear from them doesn't mean it's condoned because you also don't see them sitting behind [petitioner] either . . . Whatever reason they cannot bring themselves to come to speak, you have to speak on their behalf . . . ." While the State mentioned a custody issue, arguing that Mr. Miller sought to protect H.M. from being taken by petitioner, there was no mention of the CPS worker's testimony. The State repeatedly referenced testimony from petitioner and Ms. Shears, as well. Based on our examination of the portions of the appendix referenced by petitioner in this assignment of error, we find that the circuit court did not err in allowing the State to present the complained-of portions of its closing and rebuttal closing arguments.

Petitioner next argues that the circuit court erred by preventing him from calling Dr. William Fremouw to testify. Pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, this Court declines to address this assignment of error because petitioner fails to point this Court to his request to present that testimony or the circuit court's denial of that request. In addition, the State points out that

> unless inadvertently overlooked by the State, there is no hearing transcript of this *in camera* testimony in the appendix record for this appeal, "let alone" a direct ruling from the court on the inadmissibility of Dr. Fremouw's testimony, although, during a later pretrial hearing on January 22, 2018, the court noted that it had "entered an opinion order on [this matter] on January 17th [2018]."

Petitioner's final assignment of error is that the circuit court erred by allowing the State to present petitioner's statement to the jury where, he alleges, the statement was taken in violation of *Miranda* and *State v. Bradshaw*, 193 W. Va. 519, 457 S.E.2d 456 (1995). Petitioner admits that he voluntarily spoke with at least three officers for more than two hours along the side of the road. Without citing to the record, petitioner claims that one deputy told petitioner they were considering him the victim in the case but asked him to sign a waiver of his *Miranda* rights. He continued speaking with officers after signing the waiver, telling them the same consistent story of his father shooting at him without provocation and that he was only trying to protect himself and Ms. Shears. Petitioner was arrested approximately two hours after signing the waiver, at which time he was placed in handcuffs and put into the cruiser. He asserts that he was never advised of his *Miranda* rights following his arrest, as required by *Bradshaw*. Citing only to a forty-page hearing transcript, without citing specific pages of that transcript and without citing the actual motion, petitioner contends that he asked the circuit court to suppress his statement given at the sheriff's department. He points out that he asked to speak with his attorney. However, he admits that when he was unable to reach his attorney, he proceeded to give a statement. Petitioner now argues that the circuit court erred in admitting that statement.

> [W]e first review a circuit court's findings of fact when ruling on a motion to suppress evidence under the clearly erroneous standard. Second, we review *de novo* questions of law and the circuit court's ultimate conclusion as to the constitutionality of the law enforcement action. Under the clearly erroneous standard, a circuit court's decision ordinarily will be affirmed unless it is

6

unsupported by substantial evidence; based on an erroneous interpretation of applicable law; or, in light of the entire record, this Court is left with a firm and definite conviction that a mistake has been made. When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution.

*State v. Lilly*, 194 W. Va. 595, 600, 461 S.E.2d 101, 106 (1995) (internal citations and notes omitted); *see also State v. Farley*, 192 W. Va. 247, 252-53, 452 S.E.2d 50, 55-56 (1994). As set forth above, it is undisputed that petitioner initially voluntarily spoke with law enforcement officers; however, there is a dispute as to whether petitioner was advised of his *Miranda* rights, as Deputy Cline asserts that he twice advised petitioner of his *Miranda* rights prior to his arrest. During a hearing on February 5, 2018, Deputy Cline specifically testified that he "verbally told [petitioner], advised him of his Miranda Rights. I mentioned that normally I would have a form, I didn't, Deputy Hovatter provided us with that form. I then read the form to [petitioner]." During the hearing, the State played bodycam footage that purportedly contained the verbal recitations of petitioner's *Miranda* rights. However, neither that exhibit nor a transcript of that recording are included in the referenced portion of the appendix record before this Court. The same is true for a video that purportedly showed petitioner signing the *Miranda* form. The State contends that after petitioner was unable to reach his attorney, he initiated subsequent communications with officers. The circuit court found that there was no "evidence in the totality of the circumstances of compulsion, threats, promises, [or] physical restraints. [Petitioner] was allowed to contact his attorney. After he attempted to contact his attorney, he re-initiated the conversation." Thus, viewing the evidence in the light most favorable to the prosecution, we find that the circuit court did not err in denying petitioner's motion to suppress his statement.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 4, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison